13  504
46  247

## II. M. SUMMERS *v.* UNITED STATES INSURANCE, ANNUITY AND TRUST CO.

By the terms of the application for a policy of insurance, it appeared that the slave whose life was insured was a laborer in a tobacco warehouse, and the policy declared that he was not to be employed in a more hazardous occupation; the slave was subsequently drowned in the river Mississippi by falling from a plank whilst walking on it from a steamboat to the shore, having been sent by his master up the coast, to be employed on a sugar plantation.—*Held:* That as the slave was not lost while actually employed on the sugar plantation, and the master was not prohibited by the policy from removing the slave from New Orleans, except that he could not be taken to more southern localities, the company was liable for the loss.

*Held:* That parol evidence was admissible to show that the written assignment of a policy of insurance was intended as collateral security for an obligation which had been discharged before the suit was brought on the policy.

*Held:* That testimony to show that the company would not have insured at the rate of the policy, if it had been known that the slave would have been subjected to the risk of a voyage on a steamboat, was properly refuted.

APPEAL from the Fourth District Court of New Orleans, *Price,* J.

*Moïse & Randolph,* for plaintiff. *Hiestand* and *Leovy,* for defendants and appellants.

COLE, J. This suit is brought on a policy of life insurance to recover the amount insured, on one of the three slaves described in the policy, alleged to have become lost by means of the perils insured against.

It is insisted that defendant is not liable, because, by the terms of the application, the slaves were insured as laborers in a tobacco warehouse, and the policy declares that they are not to be employed in a more hazardous occupation. That the slave was lost at Lobdell's landing, whilst walking on the plank from the steamer Emperor to the shore. That he was then being sent by plaintiff to be employed upon a sugar plantation, which defendant avers is a more dangerous occupation than that of working in tobacco warehouses.

This defence cannot be maintained.

The slave was lost whilst a passenger on a Mississippi steamboat. There was no provision in the policy to prevent the plaintiff from removing the slave from New Orleans, except that he could not be taken to more southern localities. Which implies, he might be conducted to more northern latitudes.

Lobdell's landing is located further north than New Orleans.

Conceding that a sugar plantation is a more hazardous employment than tobacco warehouses; still, the slave was not lost whilst working thereupon. He had not reached the plantation.

If plaintiff had not had the intention of employing him upon a plantation, but had been taking the slave at the time of his death to work in a tobacco warehouse in Virginia, there could then be no doubt of the liability of the defendant. The intention to employ him on a sugar plantation was not the cause of his death ; but a strong wind which caused him to lose his balance and fall in the water in passing on a plank from the steamer to the shore.

If plaintiff had accompanied the slave, he might have changed his mind after arriving at the plantation and returned with the slave to New Orleans.

There is nothing in the policy which liberates the defendant from liability on account of the intentions that plaintiff might entertain during the existence of the policy of violating its terms.

There is a bill of exceptions to the admission of the testimony of *Mr. West*, of the firm of *Cammack, Squires & West.*

The policy and the application bear upon them the written assignment of the plaintiff of all his rights and interest therein to *Cammack, Squires & West.*

*Mr. West* testified, that neither he nor his firm had any interest therein, and had not had for a long time ; that it had been given as collateral security for an obligation that had long since been settled, and the original obligation had been extinguished before the institution of this suit.

Defendant maintains that plaintiff cannot have his action upon the policy, until he shows a written reassignment to himself.

We are of opinion, that this parol evidence did not contradict a written instrument ; it did not deny that a transfer had been made to the firm, but only that the effect of the transfer had ceased, and the firm had the right to disavow any further interest in the policy.

There is also a bill of exceptions to the opinion of the Judge rejecting testimony to show that the company would not have insured at the rate of the policy, if it had been known that the slave would have been subjected to the risk of a voyage on a steamboat.

The Judge did not err. The witnesses were not offered to explain an obscure expression in the policy, but to establish a prohibition not in the policy .

Judgment affirmed, with costs.