FLOURNOY & EPPING *vs.* WOOTEN, executor, *et al.*, and *vice versa.*

1. Where H., as a member of the firm of F. H. & Co. contracted with T., and subsequently H. retired from the firm, which then became F. & E., and T. continued to do business with the latter firm, in a suit between him and the firm of F. & E., arising out of such transactions, H. would have been a competent witness at common law, although T. was dead at the time of the trial; and he is competent, unless he falls within one of the exceptions contained in the act of 1866.

(*a.*) A witness who is not offered to testify in his own favor, and who is not a party to the record, nor ought to have been so, is competent, even though the other party to the contract or cause of action in issue or on trial may be dead.

(*b.*) An agent who makes a contract for his principal is a competent witness, although the other party to the contract is dead, because not testifying in his own favor; except in cases of corporations, where to allow the agent to testify would be substantially to allow the corporation itself to testify.

(*c.*) A witness who is interested as a party, or who is interested in the event of the suit, is incompetent to testify, where the opposite party to the contract or cause of action in issue or on trial is dead.

(*d.*) One who is a party to the record, when offered to testify in his own favor, the other party being dead, is incompetent, and one who ought to be a party is incompetent to testify when the other party to the contract, etc., is dead.

(*e.*) The act of 1866 (Code, §3854) was not intended to exclude any one from testifying who was competent as a witness by the law as it stood at the time of its passage, but did intend to make all persons competent as witnesses except those who fell within the exceptions to the act.

2. There was no error in overruling the demurrer to the plea of set-off.

3. Where a mutual account between warehousemen and their cus-

tomer was commenced in 1876, and ran regularly until 1883, with entries by the warehousemen both of debits and credits, out no settlement was made between the parties, and the account ran from year to year, the statute of limitations will only begin to run from the last charge or item of such account.

4. Although the account may have been charged on the books of the warehousemen in the name of another than the person sought to be held liable, the court having left it to the jury to find from the evidence to which of the two credit was in fact given, and whether or not the account was so charged for the convenience of the person claimed to be liable, and the jury having found that such was the fact, the court did not err in refusing a new trial on the ground that the case was within the statute of frauds.

October 16, 1883.

Witness. Evidence. Debtor and Creditor. Statute of Limitations. Before Judge WILLIS. Muscogee Superior Court. May Term, 1883.

Wooten and Taliaferro, as executors of C. B. Taliaferro, deceased, brought suit against Flournoy & Epping on a promissory note, for $1,482.20 principal. Defendants pleaded the general issue, a sm ill set-off, and an equitable plea of set-off which alleged, in brief, as follows: In 1874, the firm of Flournoy, Hatcher & Company, warehousemen in Columbus, made advances to Taliaferro & Talia·ferro, a firm composed of C. B. and C. F. Taliaferro, to buy cotton on the streets of Columbus as street buyers. C. B. Taliaferro was the father of C. F. Taliaferro; the latter was hopelessly insolvent, and so remained until his death; all parties knew this, and no credit would have been given him on his individual account. On February 21, 1876, C. B. Taliaferro went to Flournoy, Hatcher & Company, and informed them that his son was being sued; that he desired to avoid being troubled with process of garnishment, and wanted the account of Taliaferro & Taliaferro to be charged to a private account of his, which was done. Flournoy, Hatcher & Company then declined to extend further credit to C. F. Taliaferro. C. B. Taliaferro urged them to continue crediting his son, and agreed to pay what-

ever was advanced to him. They thereupon agreed to open an account with C. F. Taliaferro, and made advances which were charged in the name of C. F. Taliaferro, although the credit was, in fact, extended to C. B. Taliaferro, and on the faith of his responsibility. C. F. Taliaferro continued to aid his father in the cotton business until his death. All cotton bought by them was stored in the name of C. B. Taliaferro, and the profits arising from their transactions went to his account. He frequently examined the account running in the name of his son, promised to pay it, and did make payments thereon, one of such payments being made after the death of C. F. Taliaferro. On January 29, 1877, B. T. Hatcher, one of the firm of Flournoy, Hatcher & Company, sold his entire interest to the other members of the firm, which then became Flournoy & Epping. Since this sale, which included the account of Taliaferro, Hatcher has had no interest in the firm. Since the change in the firm, C. B. Taliaferro frequently repeated his promise to pay all amounts advanced to his son, and the firm would not have made such advances, except on his promise and credit. C. F. Taliaferro died on August 22, 1881, and C. B. Taliaferro died on June 28, 1882. Attached to the plea was an open account in the name of C. F. Taliaferro, the first charge in which was on February 25, 1876, and the last on December 20, 1880, except a charge for interest, dated May 8, 1883; the whole amounted to $1,105.30.

It is unnecessary to set out in detail the evidence introduced. The jury found for the plaintiffs $460.23. Plaintiffs moved for a new trial on the following among other grounds:

(1.) Because the court overruled a demurrer to the equitable plea.

(2.) Because the court permitted Hatcher, as a witness for the defendants, to testify to sustain the allegations of the equitable plea. Plaintiff objected to him on the ground that the contract sought to be proved was made

between the witness and C. B. Taliaferro, now deceased, and that the witness was therefore incompetent, although he had assigned all his interest in the defendants' firm before the bringing of this suit.

(3.) Because the court charged as follows: "If a father approaches warehousemen or any one else having money, and states to them that his son wants to borrow money, and tells them to furnish him with whatever amount of money he calls for, and he will pay for it, that is the debt of the father, and not the debt of the son; it is an original undertaking on his part to become responsible for the debt, and the son could not be sued upon that debt and held responsible for it; it would not be his debt; there would be no contract on his part or agreement on his part to pay it; it would not be loaned to him with the understanding and expectation that he would pay it; but it would be a loan to the father, notwithstanding it may have been charged on the books of this firm to the son; that being done at the instance of the father, if it was done in that way."

(4.) Because the court charged as follows: "Where there are mutual accounts between parties, that is, where there are mutual dealings between parties, running from year to year without any accounting or settlement between them, then the statute of limitations commences to run from the date of the last item of the account, and not from the first."

(5.) Because the court refused to charge as follows: "If the jury believe from the evidence, or from the statements contained in the bill of particulars attached to the defendant's plea, that in April, 1878, an accounting and settlement between the parties in this case was had, whereby the account up to that time was stated or liquidated by the carrying forward of the balance found due at that time to the next account, then such settlement would become a new point of departure from which a new account would begin; and if more than four years have elapsed from

such time to the death of C. B. Taliaferro, then the items of the account before and up to that time are barred by the statute of limitations."

(6.) Because the verdict was contrary to law and evidence.

The new trial was granted upon the second ground alone, and defendants excepted.

Plaintiffs also assigned as error the refusal to grant the new trial upon the other grounds besides the second.

HATCHER & PEABODY, for Flournoy & Epping.

PORTER INGRAM; PEABODY & BRANNON; LITTLE & WILLIS, contra.

BLANDFORD, Justice.

These two cases were submitted and argued together.

In the first case the question involved is whether B. T. Hatcher, who was offered as a witness in behalf of Flournoy & Epping, was competent to testify as to a contract made between himself, as one of the firm of Flournoy & Hatcher, with C. B. Taliaferro, the said Taliaferro having died since the contract was made, in order to show that after the dissolution of the firm of Flournoy & Hatcher, that Taliaferro continued business with the firm of Flournoy & Epping on the same terms which he had done with Flournoy & Hatcher. The court upon the trial admitted the witness to testify, and after verdict found, Wooten, executor, moved for a new trial, upon the ground of error in admitting Hatcher to testify, and upon other grounds in said motion contained. The court granted the motion for new trial upon the ground that he erred in admitting Hatcher to testify, and refused the motion upon the other grounds therein. Flournoy & Epping excepted to the grant of a new trial, and assign this ruling as error. Wooten, executor, excepted to the refusal to grant the new trial upon the other grounds taken in the motion.

1. The first question presented is, was Hatcher a competent witness? The record shows that he was not in any. wise interested in the event of the suit before or after the commencement of the same. The contract made between himself and Taliaferro, the deceased person, was made before any transactions had taken place between himself and Flournoy & Epping; and the testimony of Hatcher was merely intended to throw light on the subsequent dealings between Taliaferro and Flournoy & Epping. Hatcher was a competent witness at common law, and as the law stood before the passage of evidence act of 1866, Code of Georgia, §3854; and if he is incompetent, it must be by reason of the exceptions or some one of them to that act.

A witness who is not offered to testify in his own favor; who is not a party to the record, nor ought to have been a party to the record, is competent, even though the other party to the contract or cause of action in issue or on trial may be dead. See 3 *Ga.*, 520; 45 *Ib.*, 25, 147; 50 *Ib.*, 205; 51 *Ib.*, 625; 55 *Ib.*, 98; 62 *Ib.*, 639; 65 *Ib.*, 132; *Ib.*, 145; 67 *Ib.*, 247; 69 *Ib.*, 805.

An agent who makes a contract for his principal is a competent witness, although the other party to the con. tract is dead, because not testifying in his own favor. 51 *Ga.*, 625; 55 *Ib.*, 98; 62 *Ib.*, 639; 64 *Ib.*, 237; 65 *Ib.*, 132.

A witness who is interested as a party, or who is interested in the event of the suit, is incompetent to testify, where the opposite party to the. contract or cause of action in issue or on trial is dead. 37 *Ga.*, 118; 45 *Ib.*, 511; 36 *Ib.*, 520, 565; 40 *Ib.*, 673; 48 *Ib.*, 142; 53 *Ib.*, 9; 54 *Ib.*, 115, 119, 174; 55 *Ib.*, 187; 58 *Ib.*, 86; 59 *Ib.*, 180, 343; 52 *Ib.*, 640; 67 *Ib.*, 675, 249; 66 *Ib.*, 139; 64 *Ib.*, 595; 63 *Ib.*, 86; 62 *Ib*, 639; 61 *Ib.*, 428; 60 *Ib.*, 583.

One who is a party to the record when offered to testify

in his own favor, the other party being dead, is incompetent. 37 *Ga.*, 118 ; 45 *Ib.*, 511 ; 58 *Ib.*, 288 ; 56 *Ib.*, 474 ; 63 *Ib.*, 288, 479 ; 65 *Ib.*, 407 ; 67 *Ib.*, 248 (4 a).

A person who ought to be a party is incompetent to testify where the other party to the contract, etc., is dead. *Oatis vs. Harrison et al., executors*, 60 *Ga.*, 535.

It will be seen by a careful consideration of these cases, and it is believed that they embrace all the cases decided by this court on this subject, that this court has never decided that a person who is competent at common law, or who was competent to testify as a witness at the time of the passage of the evidence act of 1866, as embraced in section 3854 of the Code, was rendered incompetent by the exceptions to said act, except in cases of corporations, where a corporation seeks to prove some matter by its agents, the other party being dead, and the reason for this ruling being obvious; as the corporation only speaks through its agents, it would be the corporation testifying itself. The other party being dead, the agent of the corporation being the corporation itself, would fall within the exception to the act of 1866.

The act of 1866, §3854, was not intended to exclude any one from testifying who was competent as a witness by the law as it stood at the time of its passage, but did intend to make all persons competent as witnesses except those who fell within the exceptions to the act, and such has been the uniform ruling of this court, as manifested by the decisions above referred to. Hatcher was a competent witness under the law as it stood at the passage of the act of 1866 ; he was not rendered incompetent by any exceptions thereto ; hence the court erred in granting the new trial upon the ground that he committed error in allowing Hatcher to testify.

2. Wooten insists that the court committed error in not granting the new trial upon all the grounds contained in the motion. The first ground insisted on is that the court erred in not sustaining the demurrer and striking the plea of set off filed by defendants Flournoy & Epping. A

Flournoy & Epping *vs.* Wooten, executor, *et al.*, and *vice versa.*

reference to the plea will show that the court committed no error in overruling the demurrer thereto.

3. The next ground insisted on is that all of the defendants' account was barred by the statute of limitation, except that portion contracted within four years before the death of O. B. Taliaferro, plaintiff's intestate.

The account commenced in 1876 and ran regularly on to the year 1883; credits were given Taliaferro, and the balance charged up to the next year's account. There was no evidence of a settlement between these parties at any time from the commencement of the account until the death of O. B. Taliaferro. An account, such as this, where there was no settlement between the parties, and the same runs from year to year. the statute of limitations will commence to run duly from the last charge or item of the account; it was a mutual account, the warehouse-men keeping both debit and credit side of the account, and the court was right in holding that the account of defendants was not barred by the statute of limitations.

4. Another ground in the motion for new trial is, that as the account was charged on the books of Flournoy & Epping to O. F. Taliaferro and not to O. B. Taliaferro, that the parol promise of O. B. Taliaferro to pay the debt of O. F. Taliaferro was within the statute of frauds. The court left it to the jury to find from the evidence whether the credit was given to O. F. Taliaferro or to O. B. Taliaferro, and whether the account was charged to O. F. Taliaferro for the convenience of O. B. Taliaferro. This was proper, and the jury having found for Flournoy & Epping on the issue thus left to them, the court did not err in refusing the new trial on this ground. There is no error in refusing the new trial on the grounds mentioned in the motion, and the judgment in this case is affirmed; and in the case of Flournoy & Epping, plaintiffs in error, *vs.* M. O. Wooten, executor of O. B. Taliaferro, deceased, is reversed, upon the ground the court erred in granting the new trial.

Judgment reversed in first case and affirmed in second.