Gunn vs. Gunn.

## GUNN vs. GUNN.

[Hall, J., being disqualified, Judge Clarke, of the Pataula circuit, was appointed to preside in his stead.]

1. A mutual account is one based on a course of dealing, wherein each party has given credit to the other, on the faith of indebtedness to him.
2. If the items in favor of one side are mere payments on the indebtedness to the other, the account is not mutual.
3. It matters not whether each party keeps the account in his own favor, or one keeps the account on both sides, since it is not the form of the entries, but the fact of the mutual crediting, which is to be considered.
4. Whether or not an account is a mutual one is a question of fact.
5. In cases of such mutual accounts, the statute of limitations does not begin to run against either party until the last just item in the account on either side.
6. This doctrine rests, not on the notion that every credit in favor of one is an admission by him of indebtedness to the other, or a new promise to pay, but upon a mutual understanding, either express, or implied from the conduct of both parties, that they will continue to credit each other until, at least, one desires to terminate the course of confidential dealing, and that the balance will then be ascertained, become then due, and be paid by the one finally indebted.
7. As this state of things rests on an express or implied mutual understanding, either party may terminate it at any time by an actual payment of the balance, or by stating the account for that purpose, or by demanding a settlement privately, or by suit, or by any act which plainly shows to the other party his determination to deal no longer that way.
8. Without proof of its termination, the law presumes that such a mutual understanding, once proved, or admitted, runs through all the dealings of the parties until the complete bar of the statute has attached.

March 17, 1885. (Head-notes by the court.)

Jackson, C. J., concurred.

Blandford, J., dissented.

Statute of Limitations. Mutual Accounts. Before Judge SIMMONS. Houston Superior Court. April Term, 1884.

Reported in the decision.

Gunn vs. Gunn.

DUNCAN & MILLER, for plaintiff in error.

B. M. DAVIS, for defendant.

CLARKE, Judge.

On February 8, 1878, D. F. Gunn filed his action of complaint on account against his brother, U. M. Gunn. The bill of particulars thereto annexed is an itemized account, containing both debits and credits. The first item, dated February 25, 1867, is " by paid taxes $395.55," being a credit in favor of U. M.. Gunn. The second item is also a credit of "cash," about a month later. Then follow eight items of debits, amounting to about $1,000, scattered along from May of that year to the following February. Then succeed about fifty large items, dated in almost every month down to the end of 1870, and nearly equally divided in number, between debits and credits. The last credit item is $100 in cash, dated February 25, 1871. Beginning in the next month, and coming along in every year, except 1874 and 1875, appear debit items of large amounts of cash. There is one item in 1876, and the last one is $30, February 14, 1877.

To this suit the defendant below pleaded the general issue, payment, and the statute of limitations, or the lapse of four years since the cause of action accrued. The jury found for the plaintiff a large balance.

The court below overruled a motion for a new trial, of which, besides the formal complaints against the finding of the jury, the following were the grounds:

(1.) Because the court erred in charging the jury that the account sued on was a mutual account, if they believed from the evidence that the items thereof showed that at various times the respective parties were indebted to each other for money advanced, or goods furnished, and did not show that the credits in favor of defendant were mere items of payment on his indebtedness to plaintiff.

(2.) Because the court erred in charging the jury that, if they believed from the evidence that the account sued on was such a mutual account, and there had been no accounting, nor settlement of the same at any time, between the parties, nor statement of the accounts and balance struck, then the statute of limitations would not run in favor of defendant, except from the date of the last item thereof, and the accounts sued on would not be barred until four years from the last item.

(3.) Because the court erred in charging the jury that, if they believed such account was mutual, and there had been no settlement, it still would not be barred till four years from the date of the last item, although there might have been periods of two years or more when there were no dealings between said parties, and although all the items, for more than four years prior to the date of said suit, were in favor of plaintiff against defendant, and there were none in favor of defendant against plaintiff.

(4.) Because the court erred in charging the jury that, if they believed said account was mutual, and that there had been no settlement, and that the parties had no dealings between them from December 9, 1873, to some time in 1876, and that in 1876 and 1877, there were two other items added to said account, both debits against defendant and in favor of plaintiff, still said account would not be barred till four years from the date of the last item in said account; but if they should find said two items incorrect and not proper charges against defendant, or were mere gifts and fees, then said account was barred.

The testimony from each side plainly showed that the credit items were not payments; and that from the first item in the account to the last credit, February 25, 1871, except one debit "for a horse," the account was made up of mutual loans and advancements of money. The law is well settled, and disputed by neither party in this case, that the making of payments on an account, whether credited thereon by proper entries or account of them kept

by the party paying, will not make the account a mutual one in the sense of the subject-matter discussed. *Ford vs. Clark*, 72 *Ga.*, 760. The debits subsequent to the said last credit were charges of money loaned to and advanced for the defendant. The justice of them, though denied by defendant's plea, was fairly submitted to the jury, and found by their verdict upon evidence sufficient to support the finding. Although the defendant sought to convince the jury that he had had reckonings with the plaintiff and made settlements, and that the just balance against himself had been paid, the jury, upon a fair submission of those issues to them, and under a conflict of testimony, found that there had been no stating, or settling, or paying of the accounts.

The question whether the statement sued on was a case of mutual and reciprocal accounts, was a question of fact for the jury, and to them the judge fairly submitted it. They found it to be such. The defendant himself testified that up to 1873, the dealings between him and plaintiff were carried on " upon the mutual confidence basis." " I borrowed from him," says he, " and loaned him money; and he borrowed from me and loaned me money." The defendant also testified that he kept no written accounts of their dealings, but that his brother kept the account of both sides. This makes no difference. Thus it is conceded that, from its incipiency until February 25, 1871, the case between the parties was one of mutual and reciprocal credits and debits. But defendant below insists that this quality of mutuality, or reciprocity, ceased at the date last aforesaid, because from that time, all the credits were on the other side; consequently he claims that the statute of limitation began to run in his favor from that time; and that four years having elapsed from then till the filing of the suit, all of the items antedating that last credit in his favor are barred.

The charges complained of all assumed that the mere fact that the last credit to defendant was at the time stated, did

not establish the cessation of mutual dealings; but that, without the occurrence of something (as a stating, or settling of the accounts, or other act to show the intention to discontinue that sort of dealing), the account was to be regarded as still a mutual one down to the last item in favor of the plaintiff. It is true that in the terms used by the court, there was a failure to express that the mutuality of dealing might have been terminated otherwise than by a stating or settling of the accounts. The language of the judge was, that if " there had been no accounting or settlement . . . . between the parties, nor statement of the account and balance struck," the dealings continued to be of the nature of mutual accounts. In the charges quoted in the third and fourth grounds, the terms used are, that if "there had been no settlement," the account, once mutual, continued so. We do not regard these charges as an accurate formulation of the law; nor were they so intended by the judge. Parties having mutual dealings may, at the option of either party, terminate the mutuality at any time, either by an actual ascertainment of balance and settlement thereof, by a statement of account by either party for the purpose of terminating it, or by any act plainly showing to the other party that he means no longer to deal that way. But this is a merely abstract criticism on the charges. The defendant below did not pretend that anything had been done by either party to terminate the mutuality of the dealings, except the settlements and payments which he pleaded. If the jury had believed that such settlement had occurred, they would have been required by the charge to find against the subsequent mutuality. The charges were therefore substantially, and for the purposes of the case, correct, provided the law does not hold the mutuality to cease upon the last item of credit in favor of defendant. The plaintiff in error contends that the law does so hold, and consequently that the statute begins to run from the date of such item. Thus we reach the one question of law on which the cause depends.

Gunn vs. Gunn.

The general doctrine, which takes the case of mutual accounts out of the operation of the statute, so long as the mutuality continues, was very early developed by the courts, as an equitable extension of the saving (in the first act of limitations, viz., the statute of 21 James 1, Ch. 16) in favor of merchants' accounts. It was recognized that when parties, not strictly falling under the denomination of merchants, had a course of dealing so like that between merchants, consisting of mutual credits each to the other, the reason was the same for saving their accounts from the statute of limitations. The doctrine was also rested on the intrinsic equity of the case. But there is a conflict of authorities upon the question when that mutuality which protects against the statute ceases.

In Wait's Actions and Defences, Vol. 7, pp. 266 and 267, it is said, " It is not sufficient that there are items on both sides of the account; there must be items within the period of limitations on both sides." Of like import is Greenleaf on Ev., Vol. 2, §445. The learned commentator first named cites several cases in support of this view. Those of them most directly in point are Gulick & Princeton, etc., vs. Turnpike Company, 14 N. J. Law Rep., 545, and Belles vs. Belles, 7 Halstead, 389. Both of these precedents coming from the Supreme Court of New Jersey, and the latter being cited in the former as one of the main leaders, let us first examine it. This was a case in which the judge below refused, when requested, to charge the jury, " that there was no evidence in the cause, from which the jury ought to infer a new promise to take the case out of the statute," and that all the items of plaintiff's account which were over six years old at the beginning of his suit were barred. Two opinions were delivered. Ch. J. Ewing says: " The three principal items of the debit side of plaintiff's state of demand were of long standing, the first in 1809, for work at farming by himself and horse; the second, in 1813, for money received by the defendant for a particular purpose and not so applied; the third, in 1817

at least thirteen years before commencement of the action for the use of a wagon; and the remaining items are in July, 1824, for one day's labor of self and team; and the like in March, 1826. A credit is given for some clothes in the year 1809. Defendant pleaded the statute of limitations and a cross demand by a sealed bill of plaintiff to defendant, dated November 14, 1822, for two notes given by plaintiff to other persons (one in May, 1821), assigned to defendant at a time not shown, and for five items of account beginning in December, 1822, and giving credit to plaintiff for seven items of account, beginning June, 1823." Between those items of plaintiff's account which are more than six years before suit brought and those items within the statute, " no such connection subsists . . . as to give the whole the character of a running or current account. The plaintiff gives, indeed, a credit corresponding in date with the first charge, but the defendant claims no such credit, nor any demand or item of account against plaintiff earlier than the year 1822, unless it be the note given " (by plaintiff) " to Grover, which became due late in 1821, but when assigned to defendant we know not. If there had been no transactions between the parties after . . . 1817, and prior to suit, the items . . . of earlier date would surely be barred. The occurrence of some dealings, after a lapse of several years from 1817, wholly disconnected with the antecedent transactions cannot save these from the prescribed limitation. But viewing the case as exhibited by the plaintiff in his state of demand, there were no subsequent dealings." [Doubtless the learned judge meant to say " no subsequent *mutual* dealings "] " He professes to give the credit to which the defendant is entitled. It is for a simple item more than twenty years prior to . . . the suit. If the plaintiff meant to avail himself of the legal effect of a current account of reciprocal demands of mutual dealings, he should have shown, or at least admitted, not peremptorily denied, that such account, demands or dealings existed."

v 74-36

We make this extensive quotation to show that this decision rests on other ground than the doctrine that the mutuality ends with the last item credited to defendant, or charged by him against plaintiff. It is evident, from both opinions, that the court was passing on the question of evidence, whether it had been proved that the plaintiff's account, so far as it antedated the period of the statute, was an instance of mutual accounts. They held that the one credit allowed in plaintiff's statement to defendant, more than twenty years before suit brought and denied by defendant, did not prove that there were mutual dealings or reciprocal demands prior to about 1821 or 1822. They saw no "such connection" in the nature or circumstances of the plaintiff's account prior to 1817 and the items thereof in 1824 and 1826, " as to give to the whole the character of a running or current account." There was not, as in the case at bar, testimony that, prior to the long gap in plaintiff's account between 1817 and 1824, the parties dealt with each other " on the basis of mutual confidence." We do not feel called on to say whether we approve that court's decision as to the facts of mutuality. Chief Justice Ewing seems to concede that, if that item of credit to defendant in 1809 were established or admitted, it would be evidence of mutual dealings. It further appears, especially from the opinion of Justice Drake, that, both in the court below (which was a justice's court) and in the reviewing court, the question was confounded with one about the sufficiency of a new promise to remove the bar of the statute. Such confusion of doctrines so distinct would greatly detract from the weight of the authority, even if the decision had been precisely on the question now before us.

In Gulick & Princeton, etc., vs. Turnpike Co., from the same court, Ch. J. Hornblower cites Belles vs. Belles as a main support to his ruling, and says that the rule is correctly stated therein. We have seen that Belles vs. Belles does not go the length to which we shall see that court

reaches in Gulick's case. There the justice says: "There must be mutual dealings and reciprocal demands within the six years. It is not sufficient that there are items on both sides of the account; there must be items within the six years on both sides, otherwise the dealings for the last six years have not been mutual, but on one side only. The charge made by the defendants in 1819 is evidence, *according to the artificial reasoning which has prevailed on this subject*" (the italics are ours), "that there then was an open and unsettled account between the parties; but it is not now evidence that the account, up to that period, still remains open and unsettled. So long as the defendants continued to make charges, so long they admitted an open account; but when they ceased to make charges, the account ceased to be a mutual one. If we consider each successive entry as a new admission or promise, then, as in this case, there has been no entry on the part of the defendants since 1819; there has, therefore, been no such admission by them in six years of a pre-existing account." In this case, as in Gunn *vs.* Gunn, now before us, the plaintiff's account showed no item in favor of defendant within the statutory period, but showed some in favor of plaintiff.

Upon the authority just quoted, we have these criticisms to make: First, unquestionably it is in precise point; secondly, it is not fairly supported by the previous case of Belles *vs.* Belles; thirdly, it is clearly based on a mistaken notion of the foundation of the doctrine which saves mutual accounts from the operation of the statute. To illustrate this last proposition, we observe that the judge quotes the language of Lord Kenyon in Catlyn *vs.* Scoulding, 6 Term Rep., 189, one of the earliest authorities within our reach in favor of this general doctrine. In that case, there were charges in favor of each party within the statute, and Lord Kenyon says: "I take it to have been clearly settled, as long as I have any memory of the practice of the courts, that every new item and credit in an account given.

by one party to the other is an admission of there being some unsettled account between them, the amount of which is afterwards to be ascertained, and any act which the jury may consider as an acknowledgment of its being an open account is sufficient to take the case out of the statute."

The Supreme Court of New Jersey took this language as showing that the reason why the plaintiff's account, in any case, was saved from the operation of the statute was that the defendant had made an admission of outstanding accounts in favor of the plaintiff, in the nature of a new promise, capable of stopping the running of the statute, or even of removing the bar already matured. They therefore concluded that nothing but the defendant's own words or acts could be construed into an admission or promise by him. The moment, therefore, when he ceased to make entries against the plaintiff, he ceased to make admissions against himself or new promises. The reasoning by which the general doctrine was supported by the courts (when so understood) was not inaptly termed by Justice Hornblower, " the artificial reasoning which has prevailed on this subject."

Upon the same erroneous notion of the reason of the rule is founded that argument against the entire doctrine by which the court seems to triumph against it, in Blair vs. Drew, 6 N. H., 235. The New Hampshire judge scouts the idea that a credit, entered by the plaintiff on his account of debits against defendant, can be construed into an admission by the defendant. He even goes further, and with unimpeachable logic maintains that even if defendant keeps an account against the plaintiff, a charge which he makes against the plaintiff cannot amount to an admission that he owes the plaintiff anything. The reasoning is conclusive, but the heavy blows of the court's logic are laid upon a man of straw. It is not to be denied that the language of Lord Kenyon, above quoted, gives much plausibility to such construction and

such refutation. His infelicitous expression of a principle so long ".well-settled " (doubtless, on that account, more unguardedly expressed) has been repeatedly followed by the courts. But it would be unjust to his learned lordship's common sense to suppose that he meant to say that an entry made by one man could be construed into an admission by his antagonist, or that, by charging on my book that A. owes me for a horse, I involve myself in an admission of owing him for a cow, or for anything else. He said that " each new item and credit in an account given by one party to the other is an admission," etc. He does not make the credit alone have that effect, but the effect springs from the combined light of the debit and credit. Neither is such an effect meant to spring from the mere fact that a debit and credit have been entered on an account. It is not the entering of fancied or false items for and against the party keeping the account. But it is the conceded or proved fact that each party has, on his party, both extended credit or trust to the other, and taken or received credit or trust from him. When such mutual dealing is shown to the court, it is, we conceive, scarcely accurate to say that it constitutes an " admission." It would have been better language to say that such a state of facts implies that the parties have mutually consented that each item, in whosesoever favor it may be, shall not constitute an independent debt due immediately, to be paid or enforced at once, but that the items occurring, from time to time, in favor of the respective parties shall operate as mutual set-offs, and that the shifting balance, when either or both shall call for it, shall be the debt. This is the reason why the statute of limitations does not apply during such a state of mutual dealings. As the parties have stipulated no time when their respective credits shall be due, their respective demands do not become due at any particular time. The right of action on them does not begin unless at the option of the parties, as shown hereafter. Of course, time is not to be counted

against either of them; nor can the reasoning, by which such an understanding is implied, be justly called "artificial" any more than the same epithet may be applied to every case of agreements or understandings, implied from the conduct of both sides. If I recognize and pay accounts made by my servant with a merchant without protest or warning, it is implied that I assent to be liable for his purchases there in my name. By my conduct, I have sanctioned a course of dealing, and authorized the merchant to rely upon it in future sales. So here D. F. lends cash to U. M., and does not demand a settlement of the debt, but borrows money from him. So each one proceeds, "upon the basis of mutual confidence," to lend and to borrow, without either party calling for a settlement. Such facts being ascertained, the court rationally infers from the conduct of both sides that they are willing for whatever balance may at any time happen to be owing, not to be due, but to stand subject to be still further shifted by subsequent and similar dealings. Under such circumstances, neither party is allowed to take advantage of the other party's confidence by pleading the extent to which his friend or brother has been so encouraged and induced to extend it. It would be a fraud if allowed.

In Angell on Limitations, 136, it is said: "Mutual accounts are made up of matters of set-off. There must be a mutual credit, founded on a subsisting debt on the other side, or an express or implied agreement for a set-off of mutual debts. A natural equity arises, where there is an existing debt on one side, which constitutes a ground of credit on the other, or where there is an express or implied understanding that mutual debts shall be a satisfaction or set-off *pro tanto* between the parties." In Abbot *vs* Keith, 11 Vt., 525, the court says: "In ordinary cases of mutual dealings, no obligation is created in regard to each particular item, but only for the balance. And it is the constantly varying balance which is the debt." In

Hodges *vs.* Manly, 25 Vt., 210, occurs like language : "It has uniformly been held that distinct and different items of charge in an open and mutual account do not constitute separate claims; but that the claim, or debt, is found in the balance of the account." In New York, mutual accounts are, by statute, expressly excepted from the bar of time until six years from the last item. The court of appeals of that state, commenting upon the doctrine in question (in 79 N. Y., p. 1), declares that their statute is but an affirmance of the common law, and holds the following language as to the reason of the doctrine : "Where there are mutual accounts between two persons, it is always the understanding that the·account upon one side shall offset that upon the other; and in law, the debt due from the one to the other is only the balance left after the application in reduction of the accounts on the opposite side. In any form of action, the recovery can only be for the balance. The very theory upon which this statute is based, is that the credits are mutual, and that the account is permitted to run, with the view of ultimate adjustment and payment of the balance. . . . The action need not be, in form, an action to recover such balance, if such be its purpose or legal effect." The "complaint" on account in Georgia is, in effect, just such an action.

If such be the real foundation of the doctrine, that the statute of limitations does not apply to mutual accounts, while the mutuality continues, it is evident that arguments and decisions, based on the false theory that it rests on "the artificial reason" of admission or new promise, ought to have little weight in determining to what matters its spirit, reason and purpose make it applicable. If such be the foundation of the rule, we perceive why the statute of New York, declaring, as the court held, the common law, provided that the statute of limitations should begin to run from the last item in a mutual account on either side. The Supreme Court of that state (5 Lansing Rep.,

p. 137) decided this case. The defendant pleaded a set-off, beginning in 1855 and ending in 1863, against plaintiff's account, beginning in 1868 and ending in 1869. Plaintiff urged the statutory bar of six years against defendant's account. Held, that upon the principle of the mutuality of the accounts, the statute did not begin to run against either side till the last item, which was in plaintiff's favor in 1869. In 1 Smith's Leading Cases (H. & W.'s notes), Truman *vs.* Fenton, it is held that, " When men deal with an express or implied agreement that what each sells or delivers shall, instead of giving rise to a demand payable at once, stand as a payment, or set-off, for what has been or may be received from the other, their liability will be limited to and depend upon the balance as finally disclosed, and the statute will not begin to run until the date of the last item."

We forbear to make more extensive quotations. The rule here laid down, though disregarded by some courts, on the erroneous reasoning already discussed, stands supported by the great mass of authorities. See 35 Am. R., 501; 79 N. Y., 1; 20 Wend., 72; 9 *Id.*, 125, 126; 6 Cow. N. Y., 195; 7 Wend., 322; 5 Johns. Chanc., 522,; 5 Cranch, 15; 3 Met., 216; 2 Mass., 217; 6 Pick., 364; 8 *Id.*, 187; 1 Hill's S. C., 292; 12 Texas, 374, 420; 18 Ala., 274; 2 Port. (Ala.), 351; 19 Miss. (4 Bennet), 42; 20 Miss., 13; 20 Mo. Rep., 13; 2 Blackf., 340; 4 Sandf., 329; 2 *Id.*, 125–7; 1 Chit. Pr., 777; Peake's Cases, 121; 2 Esp. R., 569; 41 *Ga*, 44, 58, 66, 49, 54, 190; *Ford vs. Clark*, 72 *Ga.*, 760; *Flournoy & Epping vs. Wooten*, 71 *Ga.*, 168.

In the argument of counsel, much stress was laid upon the fact of a hiatus between the items of the account, in this, that from 1873 to 1876 there is no item on either side. Our reply to that is that no hiatus less than the period of limitations could, of itself, operate as a bar, or even effect or demonstrate an annulling of the implied understanding,

that each party might continue to credit the other upon the view of an ultimate adjustment of accounts. On the question of fact, whether the parties had terminated that course of mutual dealing, we do not say that long gaps in the accounts might not furnish some argument to the jury, along with other circumstances tending to show the breaking up of such relations as mutual creditors. As to that, each case must stand on its own facts.

It has also been declared to be an absurdity, that the plaintiff, by charging one or two additional items, and those small ones, after a three years' interruption of dealings, could be held to have drawn the whole account against the defendant so far forward as to be out of reach of the statute of limitations. It seemed to counsel to give the plaintiff an unfair advantage. To this view, we simply reply, that the defendant voluntarily so acted with the plaintiff, mutually borrowing and lending, as, in the opinion of the jury, to justify the implication of a treaty between them to deal with each other " on a basis of mutual confidence." This state of things being once established, the law and the jury presumed its continuance till some evidence of its termination by both or either. Defendant could have ended it any day by demanding a settlement, or plainly refusing so to deal any longer. But instead of taking steps to bring this mutual understanding to an end, it suited him better to take the benefit of plaintiff's reliance upon its continuance and obtain further loans. Such, at least, is the fair construction of the case, if we accept the jury's finding against his plea of payment or settlement.

We hold that either party could have paused at any item and demanded settlement of the existing balance. Such a demand could have been made in legal proceedings by suit. But so long as both parties saw fit not to move in the matter, there was no principle of law to break up the treaty, save the statute of limitations running from

the last transaction between them until four years before suit.

Let the judgment of the court below be affirmed.

JACKSON, C. J., concurred, but furnished no written opinion.

BLANDFORD, J., dissented, but furnished no written opinion.