## REID *v.* WILSON BROTHERS.

1. An amendment to a petition, which was offered at the time of the hearing of a demurrer to the petition, and which was disallowed by the court, forms no part of the record, and can only come to the Supreme Court by being incorporated in the bill of exceptions, or by being referred to therein and attached thereto as an exhibit and duly authenticated by the court.
2. A demurrer to an equitable petition which prays for no extraordinary relief, upon the ground that there is an ample remedy at law, has not been sustainable since the uniform procedure act of 1887.
3. A parol agreement by a member of a partnership, made after its dissolution, to pay a debt of the firm, contracted while he was a member thereof, is not, within the meaning of the statute of frauds, a promise to pay the debt of another.
4. The existence of an indebtedness by A to B, and an extension of credit to B by A by reason thereof, constitutes a mutual account. The statute of limitations only runs against such an account from the date of the last item on either side thereof.
5. The petition, although somewhat indefinite, substantially set forth a cause of action.

Argued November 10, — Decided December 6, 1899.

Equitable petition. Before Judge Smith. Wilcox superior court. June 7, 1899.

*Bankston & Cannon,* for plaintiff.
*Cutts & Lawson,* for defendants.

FISH, J. In February, 1899, G. W. Reid brought an equitable petition against Wilson Brothers, which alleged, in substance, that on May 25, 1890, he entered into a written contract with Wilson, Pryor & Co., for the sale of the sawmill timber on certain lots of land in Wilcox county, at the rate of $3.00 per acre for all the timber cut, one half to be paid in cash and the balance in installments of $200.00 per month; that immediately after entering into the contract Wilson, Pryor &·Co. commenced cutting, sawing, and carrying away the timber; and continued so to do "until about the      189 ," when the firm

of Wilson, Pryor & Co. was dissolved and was succeeded by the firm of Wilson Brothers, composed of two of the members of the old firm; and that Wilson Brothers, as the successors of Wilson, Pryor & Co., assumed all the liabilities of that firm and carried on the business as before, telling him that they would be responsible to him for the balance due him on the contract with Wilson, Pryor & Co.; that at the time of the dissolution of the firm of Wilson, Pryor & Co. it had not cut near all of the timber purchased from the plaintiff, and Wilson Brothers continued to cut, saw, and carry away the timber and to pay the plaintiff, "along, part of the amount due on said timber." The petition alleged that Wilson Brothers were indebted to the plaintiff, on the contract for the timber, in the sum of $1600.00 or other large sum. It further alleged that "Your petitioner further shows that from the　of August, 1890, up to a short time ago, a space of seven years or more, said Wilson, Pryor & Co. and said Wilson Brothers paid to your petitioner amounts on said contract from time to time, and also from time to time sold your petitioner goods and merchandise out of the commissary kept by them, upon the amount due on said contract. All moneys paid your petitioner and all goods sold your petitioner on said contract were charged up to him on books kept by said Wilson, Pryor & Co. and said Wilson Brothers, and, on account of numerous items so charged, it is impossible for your petitioner to tell how much is actually due and owing him by said Wilson Brothers on said contract, without the aid of said books of account, your petitioner and said Wilson Brothers having never had a settlement, and the account having run through a number of years. . . The said Wilson Brothers never paid your petitioner as per their contract, but petitioner was forced to take what he got in small and numerous items and moneys, and therefore the accounts between petitioner and said Wilson Brothers are very complicated, and it is impossible for petitioner, without the aid of the books, to prove the amount due him, or to find out the status of affairs between the parties to this suit, and it has been and is still impossible, from the few rendered accounts, to come anywhere near knowing the amount due your petitioner." The petition prayed that Wil-

son Brothers be required to produce their books of account, in order that the standing of the accounts between the parties might be ascertained, and for an accounting and settlement between them, and for judgment for the amount ascertained to be due the plaintiff.

The defendants demurred to the petition, upon the following grounds: "(1) The suit is barred by the statute of limitations, more than six years having intervened from the time when said claim became due and the filing of this suit. (2) The declaration sets forth no cause of action. (3) There is an ample remedy at law by suit on the contract, without the interposition of equity. (4) There is no allegation that there was any writing signed by these defendants, nor any such performance or other circumstances as would make these defendants liable for the debt, default, or miscarriage of Wilson, Pryor & Co. (5) The suit should have been filed against Wilson, Pryor & Co., and other members of said firm should have been served besides defendant R. A. Wilson, or some effort to serve them or reason why they were not served should be alleged, which has not been done. (6) The alleged mistake or mistakes set forth in par. 12 are stale, and no diligence is shown by plaintiff in correcting or endeavoring to have corrected said errors or mistakes; wherefore said paragraph is demurred to." An amendment to the petition was offered, but, upon objection by the defendants, was disallowed. The demurrer was sustained, upon the first, second, third, fourth, and sixth grounds thereof, and the plaintiff excepted.

1. The amendment offered by the plaintiff and which was disallowed by the trial judge can not be considered, because plaintiff in error sought to bring it here as a part of the record, it not being set out in the bill of exceptions, nor in any way made a part thereof. An amendment disallowed by the court is no part of the record, and can only come to the Supreme Court by being incorporated in the bill of exceptions, or by being referred to therein and attached thereto as an exhibit and duly authenticated by the court. *Sibley* v. *Mutual Reserve Fund Association*, 87 *Ga.* 738.

2. It has been several times ruled by this court that, since the

uniform procedure act of 1887, a demurrer to an equitable petition which prays for no extraordinary relief, on the ground that the petitioner has a complete and adequate remedy at law, is not sustainable. *Conley* v. *Buck*, 100 *Ga.* 187, and cases there cited.

3. Both members of the firm of Wilson Brothers were partners in the firm of Wilson, Pryor & Co. at the time of its dissolution, and at the time the indebtedness to the plaintiff was contracted, and were therefore liable for this debt, without any new agreement to pay it. The debt of a partnership is the debt of each of its members, and a new promise by one or more of the partners, made after the dissolution of the firm, to pay a partnership debt, is not, within the meaning of the statute of frauds, a promise to pay the debt of another. *Wilson* v. *Dozier*, 58 *Ga.* 602; *Weatherly* v. *Hardman*, 68 *Ga.* 592.

4. Was the claim of the plaintiff, under the allegations of the petition, barred by the statute of limitations? We think not, as, under the facts alleged, there was a mutual account existing between Wilson Brothers and Reid. *Gunn* v. *Gunn*, 74 *Ga.* 555. In Angell on Limitations (6th ed.), § 149, it is stated that "Mutual accounts are made up of matters of *set-off*. There must be a mutual credit founded on a subsisting debt on the other side, or an express or an implied agreement for a set-off of mutual debts. A natural equity arises when there are mutual credits between the parties, or where there is an existing debt on one side which constitutes a ground of credit on the other, or where there is an express or implied understanding that mutual debts shall be a satisfaction or set-off pro tanto between the parties." In Buswell on Limitations and Adverse Possession, § 195, the doctrine is stated as follows: "The principle runs through all the cases that there must, in order to bring the case within the exception, be a mutual credit founded on a subsisting debt on the other side, or an express or an implied agreement for a set-off of mutual debts." To the same effect, see Bouvier's Law Dict., "Mutual Accounts;" Catling v. Skoulding, 6 T. R. 189; Green v. Disbrow, 79 N. Y. 1. The petition in the case under consideration, in effect, alleged that the firm of Wilson Brothers was indebted to Reid, and,

by reason of such indebtedness, sold him various items of goods and merchandise, until within about two years prior to the bringing of the suit, thus making the debt due by Wilson Brothers to Reid the ground of credit extended by that firm to him, and clearly bringing the account between them within the meaning of a mutual account, as defined by the authorities cited above. Being a mutual account, the statute of limitations began to run against it only from the date of the last item on either side thereof. Civil Code, §3769.

5. While the petition was somewhat indefinite, it substantially set forth a good cause of action, as under its allegations, nothing being shown to the contrary, the plaintiff would be entitled to recover of Wilson Brothers whatever balance might be due him upon an accounting.

*Judgment reversed.   All the Justices concurring.*