## TURNER *v.* DAVIDSON *et al.*

No. 12840. September 16, 1939.

*H. C. Harrison,* for plaintiff. *Wyatt & Morgan,* for defendants.

· · .Reid, Chief Justice. This is the second appearance of this case in· this court. *Turner* v. *Davidson,* 183 *Ga.* 404. This court there held· that the verdict in favor of the defendant was erroneous, in that the evidence demanded a verdict for the plaintiff, and accordingly granted a new trial. The defendant thereafter amended his answer, the case was retried, and a verdict in favor of the defendant was again returned. Exceptions are taken by the plaintiff to the.overruling of his motion for new trial, based on the general

and certain special grounds, and to the overruling of the demurrer to the amendment of the answer. A detailed statement of the pleadings and the issues appears in the former report of the case, to which reference may be had. In substance the case made by the plaintiff, Marvin P. Turner, is as follows: In February, 1927, the New York Life Insurance Company (now in the position of a stakeholder) issued a policy of insurance on his life in the sum of $1000, which contained provisions for the payment of $10 per month to the insured for total and permanent disability, and for waiver of premiums in such event. About one year after the issuance of the policy the plaintiff was stricken blind, and became, within the meaning of the terms of the policy, totally and permanently disabled. When the policy was issued and delivered to him by the agent of the insurance company, he was unable to pay the premium; whereupon Davidson, his employer, agreed to take the policy of insurance and pay the premium, which was accordingly done. The plaintiff delivered the policy into the possession of Davidson until he should be reimbursed for the premium so advanced. The plaintiff made proper proofs of loss to the insurance company, which were accepted and approved; and since that time, until the filing of the present suit, the insurance company has been paying the monthly benefits and certain dividends to Davidson, under a purported assignment of said policy. The assignment is a forgery. The plaintiff is indebted to the defendant for various sums paid out on his behalf shortly after he was stricken blind, and also for the premium paid by Davidson on said policy. The monthly benefits already paid to Davidson by the insurance company are greatly in excess of the amount of this indebtedness. The plaintiff prayed for a judgment against Davidson in the amount received in excess of the above-mentioned indebtedness, that the assignment be delivered up and canceled, and that the insurance company be enjoined from paying any further benefits to the defendant. The defendant answered and set up an assignment of said policy, executed by the plaintiff to him, and claimed the entire right, title, and interest to said policy and the benefits paid thereunder.

In the former appearance this court said that under the theory either of the plaintiff or of the defendant the evidence demanded a verdict for the plaintiff. It was pointed out that since the evidence unquestionably showed that the benefits received by Davidson were

greatly in excess of the amount admitted by plaintiff to be due him, the benefits should be paid to plaintiff, if, as claimed by him, the policy was merely delivered to Davidson as collateral security. Under the theory of the case presented by the defendant, the ruling of the court may be found in the following sentence, taken from the opinion: "The evidence shows that Davidson had no insurable interest in the life of the insured." The amendment filed by the defendant, as above mentioned, set up an indebtedness of $1151.17 and interest due by the plaintiff to the defendant, and prayed for judgment in this amount. In addition, the defendant alleged that at the time the policy was issued the plaintiff was in his employment under a contract from December 31, 1926, to December 31, 1927, at a salary of $110 per month, to operate a filling-station at West Point, Georgia, "and that this defendant had a pecuniary interest in the continued life of the said Marvin P. Turner by reason of the fact that the said Marvin P. Turner was a valuable employee and had been in the employ of the defendant since March, 1917, and was operating a filling-station for the said defendant at a profit, and to change employees and to replace the said Turner with another employee would cost and did cost the defendant around $1000, and that at the time the policy was issued and the defendant was made the beneficiary by assignment of the said policy to the defendant [he] desired to protect this contract of employment by taking out the insurance the subject-matter of this litigation, and by reason of the contract of employment and the relation of employer and employee defendant had an insurable interest in the life of the said Turner, and had the policy issued to protect his interest in the life of the said Turner."

■ "It is well settled that a former decision of this court in the same case becomes the law of that case, and can not thereafter, upon a subsequent appeal, be modified or overruled. *Rawlins* v. *State,* 126 *Ga.* 96 (54 S. E. 924) ; *Allen* v. *Schweigert,* 113 *Ga.* 69 (38 S. E. 397) ; *Western & Atlantic R. Co.* v. *Third National Bank,* 125 *Ga.* 489 (54 S. E. 621) ; *Southern Bell Tel. Co.* v. *Glawson,* 140 *Ga.* 507 (79 S. E. 136), and cit." *Dixon* v. *Federal Farm Mortgage Corporation,* 187 *Ga.* 660 (1 S. E. 2d, 732). This ruling disposes of the request of the defendant in error that we "review and reverse" the former decision of this court. Accordingly, it may be taken as settled in this case that an employer does

not have an insurable interest in the life of his employee solely because of the relationship of employer and employee; and that the plaintiff, the insured, may raise the question whether the defendant (insured's employer at the time the policy was issued) had an insurable interest in his life, and, if not, may lay claim to the proceeds of the policy. It seems clear that no exact and all-inclusive rule can be laid down as to when an employer has an insurable interest in the life of his employee. Each case must generally depend for its solution upon its own particular facts. As a general rule, a reasonable expectation of pecuniary gain or advantage through the continued life of another person, and consequent loss by reason of his death, creates an insurable interest in the life of such person. 14 R. C. L. 919; *McFarlane* v. *Robertson*, 137 *Ga.* 132 (5) (73 S. E. 490); *Clements* v. *Terrell*, 167 *Ga.* 237 (145 S. E. 78, 60 A. L. R. 969); *Interstate Life & Accident Co.* v. *Frazier*, 40 *Ga. App.* 811 (151 S. E. 529). Warnock v. Davis, 104 U. S. 775, 779 (26 L. ed. 924); Appeal of Corson, 113 Pa. 438 (6 Atl. 113, 57 Am. R. 479). An employer does not prima facie have an insurable interest in the life of his employee; and it would seem that, for such to be shown, it should appear that from the nature and character of the employment and the services rendered, their importance to the business conducted, and the character and particular ability of the employee, his death would be reasonably expected to result in substantial pecuniary loss to the employer. A small and insignificant economic readjustment which would normally follow the death of an employee performing ordinary duties requiring no special skill or knowledge would not give the employer an insurable interest in the life of his employee. In United Security Life Ins. &c. Co. *v.* Brown, 270 Pa. 270 (113 Atl. 446), it was said: "To sustain an insurance contract insuring an employee's life, it must appear that the employer securing the policy has a real concern in the life of the party named, whose death would be the cause of substantial loss to the business; and this does not follow the cessation of ordinary service such as that of a manager of a storage-house owned by the beneficiary, but arises where the success of the business is dependent upon the continued life of the employee." See also Murray v. Higgins Co., 300 Pa. 341 (150 Atl. 629). Thus where it appears that an employer has a substantial economic interest in the

life of his employee, that is that he might be reasonably expected to reap a substantial pecuniary benefit through the continued life of such employee, and sustain consequent loss upon his death, a policy of insurance taken out by him in good faith to protect his interest in the employee should be upheld.

The amendment offered by the defendant, while it contained rather broad and general allegations upon the subject, was sufficient to withstand a general demurrer. It was therein alleged that Marvin Turner was a valuable employee; had been in the employment of the defendant since March, 1917, "and was operating a filling-station for the said defendant at a profit, and to change employees and to replace the said Turner with another employee would cost and did cost the defendant around $1000," and that the policy was taken out and assigned to defendant to protect him in this connection. An examination of the evidence, however, discloses that it did not sufficiently support the allegations in the amendment, so as to authorize a finding that the defendant had an insurable interest in the life of Turner. It merely appears that Davidson was engaged in the wholesale distribution of gasoline and oil, and that Turner was employed by him to drive a truck and "work the retail trade." No evidence was introduced which would have authorized the jury to conclude that the cessation of employment of Turner from disability or death might reasonably have been expected to, or actually did, result in substantial pecuniary loss to Davidson, so as to give him an insurable interest in his life. For aught that appears, Turner was merely an ordinary employee performing duties requiring no special skill or knowledge and with no particular benefit to Davidson, which might have been performed as well by other persons who might have been immediately obtained by Davidson to replace him. Upon what grounds Davidson might have thought he would suffer substantial loss from the cessation of Turner's employment by disability or death the evidence gives no material hint. Davidson, in relating the circumstances under which the policy was taken out, testified that he told the agent: "If you will have this policy written for $1000—Marvin is a valuable employee of mine, to protect me, it would cost me more than $1000 to replace him,—if you will reduce the policy to $1000 and make it payable to me to have all the benefits whatsoever, Marvin not to have anything to do with it, and I will pay

the premium." It is to be noted that the defendant was here testifying to a conversation that he had with the insurance agent, and was not purporting to testify to the truth of the statements made. In no other part of his testimony do we find that he purported to so testify. The burden was upon the defendant to make out a satisfactory case of insurable interest.

Much importance is attached to the allegations in the amendment, and the proof offered in its support, of the existence of a contract of employment between Davidson and Turner for 1927, the year in which the policy was issued. In so far as the question of an "insurable interest" may be concerned, this proof was a matter of degree and not of kind, and, without other supporting proof of the nature above pointed out, did not show an insurable interest, under the facts of this case. We have not overlooked in this connection the following statement in 14 R. C. L. 921: "Either a master or a servant may procure insurance on the life of the other where there is a contract of employment for a definite time." An examination of the decisions cited in support of the text (found in 57 Am. Dec. 99), shows that they do not appear to be authority for the statement above quoted, in so far as it relates to the insurable interest of an employer in the life of his employee. The cases of Woodfin v. Asheville Mutual Ins. Co., 51 N. C. (6 Jones L.) 558, and Summers v. U. S. Trust &c. Co., 13 La. Ann. 504, involved insurance upon the life of slaves, and in neither case does it appear that the question of insurable interest was discussed. The case of Hebdon v. West, 3 B. & S. 579, involved the question whether an employee had an insurable interest in the life of his employer; it being held that where the employee had a contract for services for a number of years at an annual salary, he had an insurable interest in the life of his employer to the amount which was payable to him for the unexpired portion of his term, provided he continued in service. In that case it affirmatively appeared that the employee was to obtain a definite pecuniary advantage from the continued life of his employer in exchange for his services, and that he would suffer loss upon his death during the stipulated term. The case of Miller v. Eagle Life &c. Ins. Co., 2 E. D. Smith (N. Y.), 268, did not, strictly speaking, involve insurance upon the life of an employee by an employer; and the decision merely constituted a ruling that under the particular facts pre-

sented an insurable interest was shown. It appeared that the plaintiff beneficiary advanced necessary funds (something over $1000) to enable the insured to equip himself for a journey to California, in consideration of which it was agreed that for two years the plaintiff was to receive "one half of all profits to arise from gold-diggings and any other employment or business which the said" insured "shall engage in." On the same day when this contract was executed and the funds advanced, Gordon Miller took out a policy of insurance for $1000 on the life of the insured. Shortly thereafter the insured died. The facts there presented do not seem analogous to the ordinary contract of service between an employer and employee, where the services are rendered and paid for by the month. In that case it appeared that at the time of the issuance of the policy of insurance the beneficiary had actually advanced $1000, from which he would reap no gain should insured die before expiration of the term. May in his work on Insurance, § 109 b, likens the relation of the parties in such case to that of debtor and creditor. Certainly the decision did not rest on the principle stated in the text, to the effect that an employer has an insurable interest in the life of his employee where there is a contract of employment for a definite time. We can but conclude that the evidence failed to support the verdict for the defendant, and that a new trial should be granted.

■ In his amendment the defendant set up an indebtedness of $1151.17, besides interest, alleged to be due to him by the plaintiff, and prayed judgment therefor. This, it is to be borne in mind, is set up and the recovery claimed independently of any connection with the insurance policy, and not to establish any insurable interest in the plaintiff by reason of the alleged debtor-creditor relationship. It is alleged that this amount was the balance due under a mutual account between the parties, which existed from 1921 to 1934, "as shown by an itemized statement attached hereto, marked exhibits 'A' and 'B.'" There was a demurrer to this part of the amendment and the exhibits attached thereto, or the grounds that no mutual account was shown, and that it affirmatively appeared that the indebtedness claimed was barred by the statute of limitations. This demurrer was overruled, and exception to that ruling was taken by the plaintiff. Exhibit "A" is headed, "Marvin P. Turner Account," and represents the

indebtedness from Turner to Davidson. The first entry thereon is as follows: "1924, Balance a/c, $124.80." The next entry is dated March 15, 1928, as "Cash Dr. Cooper, $2.00." Then follow 27 entries of money paid out and cash advanced during the period from March, 1928, to June 9, 1928. The next entry, dated January 31, 1929, is "Jan. Ac. $1.98." Immediately thereafter is a credit entry of "Cash" $1.98, dated Feb. 7, 1929. Following this there are debits, entered as monthly accounts, for each of the following months in 1929, 1930 (except the month of May), 1931, 1932, 1933, and through July, 1934. After each such monthly debit appears a cash credit in the exact amount of the previous debit, in each instance the credit entry being made within 30 days from the date of the previous debit. Exhibit "B" is headed: "Indebtedness of John L. Davidson to Marvin P. Turner." The first entry on this statement is "1/1/21, salary $110." Immediately following is a credit entry of $110 for "salary," dated January 7, 1921. On the first day of each of the following months in 1921, through February, 1928, there is a debit entry of $110 as "salary." With the exceptions of October, 1921, November, 1921, February, 1922, September, 1924, and July, 1927, there is a monthly credit entry of $110. In October, 1921, the credit entry is $100. In November, 1921, the credit entry is $120. In February, 1922, the credit entry is $100. In September, 1924, the credit entry is $50. In July, 1927, the credit entry is $80.21.

"All actions upon open account . . shall be brought within four years after the right of action shall have accrued." Code, § 3-706. "In order to make such a mutual account as will prevent the statute of limitations from beginning to run except from the date of the last item thereof, there shall be an indebtedness on both sides. Mere entries of credits of partial payments shall not be sufficient." § 3-707. "With respect to mutual accounts, the statute of limitations begins to run from the date of the last item embraced within the mutual dealings." *Adams* v. *Holland,* 101 *Ga.* 43 (2) (28 S. E. 434); *Marks* v. *Maxwell Furniture Co.,* 50 *Ga. App.* 325, and cit. "A mutual account is one based on a course of dealing, wherein each party has given credit to the other, on the faith of indebtedness to him. . . If the items in favor of one side are mere payments on the indebtedness to the other, the account is not mutual. . . This doctrine rests, not on the notion

that every credit in favor of one is an admission by him of indebtedness to the other, or a new promise to pay, but upon a mutual understanding, either express, or implied from the conduct of both parties, that they will continue to credit each other until, at least, one desires to terminate the course of confidential dealing, and that the balance will then be ascertained, become then due, and be paid by the one finally indebted." *Gunn* v. *Gunn*, 74 *Ga.* 555 (58 Am. R. 447). See also *Reid* v. *Wilson*, 109 *Ga.* 424 (34 S. E. 608) ; *Wagener* v. *Steele*, 117 *Ga.* 145 (43 S. E. 403) ; *Smith* v. *Hembree*, 3 *Ga. App.* 510 (60 S. E. 126) ; *Mobley* v. *Pendergrast*, 8 *Ga. App.* 565 (70 S. E. 18) ; *Schall* v. *Eisner*, 58 *Ga.* 191; *Liseur* v. *Hitson*, 95 *Ga.* 527 (20 S. E. 498) ; *Hardin* v. *Stanton*, 14 *Ga. App.* 299 (80 S. E. 698) ; *Northington* v. *Granade*, 118 *Ga.* 584; *Godley* v. *Hopkins*, 126 *Ga.* 178 (54 S. E. 974). It can not be said as a matter of law that the itemized statements attached to the answer affirmatively disclose that there was no mutual account between the parties. It appears that during the years 1921, 1922, 1927 Davidson became indebted to Turner for salary, and that during 1924 and thereafter in 1928 through 1934 Turner became indebted to Davidson. "Whether or not an account is a mutual one is a question of fact." *Gunn* v. *Gunn*, supra. "The existence of an indebtedness by A to B, and an extension of credit to B by A by reason thereof, constitutes a mutual account." *Reid* v. *Wilson*, supra. The answer distinctly alleged that "the mutual account which existed from 1921 through August 1, 1934, between the plaintiff and the defendant arose by reason of the fact that defendant extended credit to the plaintiff by reason of the fact that the defendant was indebted to plaintiff throughout this time." It matters not that more than four years has elapsed since the last credit in favor of the plaintiff. *Gunn* v. *Gunn*, supra. We are of the opinion that the demurrer was properly overruled. The verdict, construed in the light of the charge of the court, was a finding in favor of the defendant on the right to the proceeds of the policy, without passing on the question of indebtedness due by Turner to Davidson. In other words, the judge charged the jury that if they found that Davidson had an insurable interest in the life of Turner, their verdict should be for the defendant, and that it would not be necessary for them in such event to determine whether Turner was indebted to Davidson as claimed. Therefore it is not

necessary for us to determine whether the evidence disclosed, as alleged, that the account between the parties was a mutual one. For the reason pointed out in the first division of this opinion, the judgment overruling the motion for new trial is

Reversed. *All the Justices concur.*