MELCHER v. THE EXCHANGE BANK OF JEFFERSON CITY, et al., Appellants.

1.  **Injunction.**  Injunction will lie to restrain the collection of notes included in a settlement of accounts previously had between the parties.

2.  ―――.  The injunction in this case held improperly granted by the trial court because the evidence did not show that the notes were included in the settlement as claimed by plaintiff.

3.  **Attorney, Authority of.**  An attorney having in charge certain notes for collection and settlement cannot, without his client's consent, include in the settlement other notes not in his hands.

*Appeal from Cole Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED.

*Smith & Krauthoff* and *A. M. Hough* for appellants.

(1)  Injunction is not a proper remedy in this case. It is a well settled rule that an injunction will not be granted where there is a full and adequate remedy at law.   High on Injunction, section 30.   The plaintiff had his remedy at law.  *Milliken v. Shapleigh*, 36 Mo. 596;  *Wilson v. Smith*, 3 How. 763;  Wells on Re-

plevin, sec. 59 ; *Groff v. Shannon,* 7 Ia. 508 ; *Murray v. Burling,* 10 Johns. 172 ; *Bissel v. Drake,* 19 Johns. 66 ; *Wilkins v. Hogue,* 2 Jones' Eq. 479 ; *Bigelow v. Andress,* 31 Ill. 322 ; *Waterman v Johnson,* 49 Mo. 410. (2) But if injunction was the proper remedy, the right of the case on the evidence is with the defendants. The receipt shows that only the notes in the hands of Ewing & Hough were covered by the settlement. *Grumley v. Webb,* 44 Mo. 444 ; *Maddux v. Bevan,* 39 Md. 485. (3) Even if the settlement of Ewing & Hough was broad enough to cover other notes than those in their hands, they had no authority to include them or bind Aultman to deliver them. The power to compromise is not possessed by an attorney, unless expressly conferred by the client. *Davidson v. Rozier,* 23 Mo. 387 ; *Walden v. Bolton,* 55 Mo. 405 ; *Spears v. Ledergerber,* 56 Mo. 465 ; Weeks on Attorneys, 397, and notes.

*G. T. White* and *Edwards & Davison* for respondent.

(1) Injunction is a proper remedy. High on Injunction, section 12 ; *Dunneroder v. Thias,* 51 Mo. 100 ; *Turner v. Stewart,* 78 Mo. 480. (2) It was not necessary that there should have been any charge of insolvency or proof of the same. R. S., 1879, sec. 2722 ; *Turner v. Stewart,* 78 Mo. 480. But even if this was necessary, it stands admitted in the record that C. Russell & Company were bankrupts, and that Aultman was their assignee, that these notes were executed to him as such assignee, and that he was a citizen of the state of Ohio. The Exchange Bank was only a nominal party. (3) The attempt to construe the receipt given by Melcher's attorney, executed after the contract was made, into a contract of compromise cannot be sustained. (4) The statement that Edwards was fully advised as to what notes and accounts were being settled is unfounded in

fact. The evidence of Edwards shows that no account was taken of the amount being settled, but the attorneys were settling the indebtedness between Melcher and Aultman, and this is not denied by Hough or any one else. (5) Aultman had full knowledge of the fact that his attorney had compromised with Melcher and he received the amount paid them in the compromise, and whether he had previously authorized them to compromise and settle with Melcher is immaterial. *Semple v. Atkinson*, 64 Mo. 504; *Grumley v. Webb*, 48 Mo. 584.

DeArmond, C.—This is a proceeding by injunction to restrain defendants from collecting certain promissory notes signed by plaintiff as surety or guarantor, and to compel defendant, Aultman, to assign and deliver such notes to him and the other defendant to pay over to him the amount collected by it on a specified note. Melcher lived in Cole county, Missouri, Aultman in Ohio. The firm of C. Russell & Company had been adjudged bankrupts in a federal court in Ohio and Aultman appointed their assignee. Melcher had sold machinery for Russell & Company, and later made sales for their assignee under a contract, for the performance of which he gave bond. By this contract Melcher was required to guarantee in writing the payment of all notes taken by him for machinery sold for the assignee. This he did. But he fell behind in his accounts with Aultman and became insolvent. In course of time Aultman sent to Ewing & Hough, attorneys at Jefferson City, for collection an account against him for about six hundred dollars, and five promissory notes signed by him as guarantor, aggregating in amount about five hundred dollars. Not being able to obtain payment from the makers of these notes the attorneys turned to the guarantor and applied to him for payment of the notes as well as the account. The notes were shown to him and "figured up" and their amount ascertained in his

presence. Negotiations for compromise and settlement began between J. R. Edwards, of Edwards & Davison, attorneys representing Melcher, and A. M. Hough, of Ewing & Hough, representing Aultman. They ended in a settlement, the terms and scope of which are in dispute in this action.

Edwards paid Hough four hundred and fifty dollars, and this receipt was passed : " Received of J. R. Edwards the sum of four hundred and fifty dollars, in full of all claims in our hands for collection against Nick. Melcher in favor of C. Aultman, assignee of Russell & Company, bankrupts, *the same being an entire and full settlement* between the said Aultman, assignee as aforesaid, for all notes, machinery and repairs of whatever kind and description, and all notes and claims of which Melcher is security or guarantor. All notes to be assigned to him for his own benefit.

"EWING & HOUGH,
"For C. AULTMAN, Assignee."

Respecting this receipt Mr. Edwards in his testimony says this : " When I handed Hough the receipt to sign he made some objection to it, and asked me to put it in these words : 'In our hands.' I said to him, ' Well, Hough, I don't know whether it makes any difference, as we are settling the whole matter between Melcher and Aultman, and if you prefer it I will add those words ;' he said, 'I understand we are settling all Melcher's indebtedness to Aultman, but I don't want that fellow to come back on me if there should be other notes out ; I don't know of any, and my understanding is that these are all the notes against Melcher.' With this understanding and at the request of Mr. Hough I made the addition of the words in the receipt."

The six hundred dollar account was receipted and the five notes, after being assigned "without recourse" by Aultman to Melcher, were handed by Hough to Edwards in an envelope. By the settlement Melcher acquired the property in five machines and a lot of repairs.

theretofore belonging to Aultman, asssignee, valued at two hundred and fifty dollars. Some of the notes turned over were signed in German and Edwards did not notice what or how many notes were in the envelope. He swears positively that the settlement was of all Melcher's indebtedness to Aultman, and that all the notes signed by Melcher as surety or guarantor were to be by Aultman assigned to Melcher, for Melcher's own use and benefit. Neither Edwards nor Hough knew how many notes Melcher had so assigned. Neither knew that there were any such notes except the five put into Ewing & Hough's hands for collection. Hough told Edwards the five notes amounted to about five hundred dollars. No mention was made by Melcher or Edwards of any notes other than those five, and what Hough said on this point is shown in the evidence of Mr. Edwards above transcribed. Hough thought they were settling all the notes, as will further appear. Some time after this settlement, Melcher called at Edwards & Davison's office to get a note on one Phillip Koeppel. It was not in the envelope where the five notes, before in the hands of Ewing & Hough, were found. Upon inquiry it was learned that this Koeppel note which was for about one hundred and seventy dollars, was with another note for about one hundred and seventy-five dollars, and still another for seventy-five dollars, in the Exchange Bank for collection. These three notes were payable to Aultman, assignee, and signed by Melcher as guarantor, and had been placed in the bank by Aultman. Thereupon, Edwards, as attorney for Melcher, called upon Hough and told him what he had just learned, and asked Hough his recollection of their settlement. Hough expressed surprise at the turn of affiairs, and as indicative of his understanding wrote Aultman the following letter, which Edwards, to whom he showed it, agreed was according to his understanding, too:

"C Aultman, Canton, Ohio.

"DEAR SIR: Yours of the 28th ult. received.

Our understanding was that we were settling Melcher's account with you as assignee. Nothing had been said about any other notes than those we held for collection in your letters to us or ours to you, and we were under the impression that the notes we held for collection and the account was the *whole of his indebtedness.* Melcher mentioned no other notes to us. While our receipts covered only the notes held by us and the account, *we supposed that settled the whole of Melcher's indebtedness to you.* Mr. Edwards to-day served a notice on us that he would on the fourteenth of March, 1881, present a petition to our circuit judge to restrain the collection of the notes held by the Exchange Bank and to compel a delivery and endorsement of them to Melcher.

"Very Truly,
"EWING & HOUGH."

Meanwhile the bank collected the Koeppel note of one hundred and seventy dollars, and Melcher sued out a temporary injunction to restrain the collection of the other notes and the payment to Aultman of the one hundred and seventy dollars 'already collected, and to compel Aultman to assign and deliver to him, Melcher, all the notes signed by him as guarantor or surety as aforesaid, and to compel the bank to pay him the one hundred and seventy dollars. Aultman never gave his attorneys any authority to include in the compromise any notes except the five in their hands for collection. He understood the settlement to cover no notes except those five; Melcher understood it to cover all the notes he had signed in manner as before stated. There is nothing in the record to show whether or not Aultman has still other notes signed by Melcher as guarantor or surety. Among the letters that passed between Aultman and his attorneys are these:

"CITY OF JEFFERSON, Mo., Jan. 21, 1881.

"*C. Aultman, Assignee, Canton, Ohio.*

"DEAR SIR: We have just this day succeeded in

getting a statement and proposition of Nicholas Melcher in regard to the indebtedness due you as assignee. He says he has three old machines, one here, one at Mt. Pleasant, Miller county, and one at Osage City, this county, and about twenty-five dollars' worth of repairs. He rates the machines at seventy-five dollars each. He says he will give you four hundred dollars cash for a settlement in full, and you deliver the notes we have to him, and he keep the property he has on hand. That is probably as much as you can ever get out of him. We consider a judgment against him worthless. If you are not willing to accept his figures, send us yours. We will pursue whatever course you may desire.

"Very Truly,

"EWING & HOUGH."

"CANTON, OHIO, January 25, 1881.
"*Ewing & Hough, Jefferson City, Mo.*

"GENTLEMEN: Your favor of the twenty-first inst. concerning the N. Melcher claim is received, and in reply to the proposition he makes I have to say that if he will satisfy your charge in this matter so as to net us four hundred dollars in cash, I will accept the amount in settlement in full of his account, and the notes in your possession on which he is endorser or guarantor, and which are said to be worthless or uncollectable.

"Yours Truly,

"C. AULTMAN, Assignee."

All the negotiations were between Edwards and Hough, representing their respective clients. The principal issue raised by the pleadings and evidence is whether the settlement embraced all notes to Aultman, signed by Melcher as guarantor or surety, or only the five notes which Ewing and Hough had for collection. Upon the hearing the court found that all notes as aforesaid, were covered by the settlement and made perpetual the injunction restraining the collection by defendant of the said notes and requiring that Aultman should as-

sign to Melcher all such notes, and that the said bank should pay to him the one hundred and seventy dollars collected from Koeppel.   The defendants appealed.

I.   It is argued that plaintiff had an ample remedy in a suit in attachment or replevin.   Without discussing at length the law of injunctions, as laid down in our statute, I may adopt the views expressed in the case of *Turner v. Stewart*, 78 Mo. 480, as applicable to, and decisive of this question.   Under our broad statute (section 2722, R. S.) the court of equity did not err in entertaining jurisdiction.   It was not bound to force the plaintiff into the actions suggested, wherein bonds would have to be given to secure the possession of the things sought, and where the remedy would probably have been inadequate.   Nor should the court lightly deny jurisdiction when to do so may be to drive one of our own citizens from the home forum to contend for his rights before a foreign tribunal.

II.   It is evident to my mind from all that appears in the record, that Melcher never told either his own attorney or Aultman's attorney what notes or how many notes he had signed as surety or guarantor.   It is equally clear that Melcher was told just what notes Ewing & Hough had for collection.   His attorney knew about how much those notes amounted to.   His attorney, too, meant to settle the whole matter between Melcher and Aultman, and according to his understanding did settle it all.   Hough, as attorney for Aultman, understood they were settling the whole matter.   This understanding was based upon the assumption that there were no other notes to be settled.   That is evident from the receipt, the amendment made to the receipt, and the remarks of Hough at the time the receipt was given, as detailed by Mr. Edwards.   Hough understood that everything was settled, for nothing had been said about anything else between Melcher and Aultman.   But Hough realized that there might be other notes out and as he was pro-

ceeding upon the theory that there were none he would make the receipt its own interpreter by limiting the notes settled to the ones "in our hands." Why? Mr. Edwards tells us : "*He said, 'I understand we are set-tling all Melcher's indebtedness to Aultman, but I don't want that fellow to come back on me if there should be other notes out ; I don't know of any and my un-derstanding is that those are all the notes against Melcher.*' "

Now, as we have aready seen, Hough did not know that any other notes were out. He had never heard of any other notes. He had talked with Melcher, and Melcher had not intimated that there were any others. He believed that the five notes he had shown to Melcher were all the notes on which Melcher was liable to Aultman. Melcher might easily have suggested that there were other notes, and that they, too, must be included in the settlement. Again, how could Hough be guarding against "that fellow" coming back on him if he was bargaining away to Melcher the notes out, "if there should be other notes out," as well as the five notes in his hands? What meaning can Hough's remarks and his receipt, as he insisted on having it, convey if not this : That he understood that they were settling all the notes because he knew of no others and believed there were no others ; but that if there were others in fact he would escape a possible difficulty with his client by so wording his receipt that it could not be made to appear by the receipt that the notes of which he knew nothing were em-braced in the settlement? He said in effect : "Our set-tlement covers all the notes I know of and I all think that exist, but if there should be other notes out such other notes are not affected by this settlememt." That Aultman did not authorize his attorneys to include the notes in dispute in the settlement, and did not understand that they were included, is too clear to justify comment upon that part of the evidence. Melcher and his at-torney understood the settlement to embrace every-

thing between the parties. The understanding arose from Melcher's neglect to inform his attorney that the five notes in Ewing & Hough's hands were not all the notes to be settled. It is not necessary to consider whether this evident misunderstanding could be made the basis of an action against the party who should refuse to do his part toward putting each into his former position, but I do not find in it all the necessary facts upon which the injunction can rest. Edwards and Hough made the settlement and in the light of all the facts their settlement did not, I think, entitle Melcher to any but the five notes which were duly assigned to him.

III. Since Ewing & Hough had no authority to include any but the five notes in the settlement, and since Aultman never recognized the settlement as covering any other notes, I would hold, even if Hough had settled the other notes, that such settlement would not be binding upon Aultman. The attorney cannot thus bind his client without his authority, and especially as to something outside of the business entrusted by client to attorney. *Spears v. Ledergerber*, 56 Mo. 465. I think the court erred and its judgment should, therefore, be reversed and the cause remanded with directions to dissolve the injunction. Martin, C., concurs; Ewing, C., not sitting, having been of counsel below; Henry, C. J., absent.