BY THE

# ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS.

AT THE

## OCTOBER TERM, 1891.

---

H. G. WILLARD, Respondent, v. THE A. SIEGEL GAS-
FIXTURE COMPANY, Appellant.

### St. Louis Court of Appeals, November 10, 1891.

1. **Attorney and Client:** IMPLIED AUTHORITY OF ATTORNEY. An attorney has no implied authority to compromise a claim placed in his hands for collection.

2. ———: SUFFICIENCY OF EVIDENCE TO ESTABLISH AUTHORITY ON THE PART OF THE ATTORNEY TO COMPROMISE. The evidence in this cause is considered, and it is *held* to be insufficient to establish the authority of an attorney to effect a compromise in question, or to estop the client from denying the attorney's authority.

3. **Law and Fact:** ORAL CONTRACT. When the terms of an oral argument are given and are unambiguous, the construction of the contract is a question of law for the court.

*Appeal from the St. Louis City Circuit Court.*—HON.
LEROY B. VALLIANT, Judge.

AFFIRMED.

*H. D. McCorkle* and *Geo. W. Taussig*, for appellant.

The question of agency is a matter of fact which it is the province of the jury to decide upon, and, if there is any evidence tending to prove the authority of. the agent, it should be left to the jury to determine the sufficiency and weight of the evidence. *McClung v. Spotswood,* 19 Ala. 165; *Thayer v. Boston,* 19 Pick. 511–6; *Owen v. White,* 5 Porter, 435; *Gilpatrick v. Biddeford,* 51 Me. 182; *Railroad v. Henlein,* 52 Ala. 606; *Fisher v. Stevens,* 16 Ill. 397; *Irvine v. Buckalow,* 12 Serg. & R. 35; *King v. Pope,* 28 Ala. 601; *Hart v. Girard,* 56 Pa. St. 238; *Saving Society v. Bank,* 36 Pa. St. 498. Even if the agency be admitted, if the authority be given by parol, the question of kind, nature and extent of authority conferred should be submitted to the jury upon the evidence; it is for them to say whether the agent has exceeded his authority. *Bank v. Planett's Adm'r,* 37 Ala. 222; *McMorris v. Simpson,* 21 Wend. 610; *McClung v. Spotswood, supra.*

*Mills & Flitcraft,* for respondent.

The burden is on the debtor to show that the compromise was made by authority or was ratified. *Walden v. Bolton,* 55 Mo. 410; *Spears v. Ledergerber,* 56 Mo. 465; *Melcher v. Bank,* 85 Mo. 371; *Semple v. Atkinson,* 64 Mo. 504; *Roberts v. Nelson,* 22 Mo. App. 28; *Lewis v. Baker,* 24 Mo. App. 682. In the case of *Black v. Rogers,* 75 Mo. 441, the attorney made the compromise in open court, in the presence and hearing of his client. The general doctrine is not departed from. The authority of the earlier cases is recognized in *Davis v. Hall,* 90 Mo. 659. The St. Louis Court of

Appeals has also come to the same conclusion in *Roberts v. Nelson,* 22 Mo. App. 28, and *Lewis v. Baker,* 24 Mo. App. 682.

BIGGS, J.—The plaintiff is doing business in the city of Chicago under the name of H. G. Willard & Co. Before the indebtedness sued on accrued, the plaintiff had conducted the business as manager for the Archer & Pancoast Manufacturing Company of New York.

This is an action on account for goods sold by the plaintiff to the defendant corporation. The defendant admitted the purchase, but pleaded accord and satisfaction. At the close of the case the court instructed the jury that the defendant had failed in its defense, and that the verdict should be for the plaintiff. There was a verdict and judgment accordingly, and the defendant has prosecuted this appeal.

It is insisted by the defendant that there was substantial evidence tending to prove the defense which it attempted to make. If so, the circuit court committed error in refusing to submit the case to the jury.

The defendant predicated its defense upon the following facts. After the sale of the goods in question, the defendant on the fifth day of May, 1890, made an assignment for the benefit of its creditors. The plaintiff placed his account with R. G. Dunn & Co., for collection, and the latter sent it to Mills & Flitcraft, its St. Louis attorneys. The defendant wrote letters to all of its creditors, among them the plaintiff, requesting them to meet at the office of the defendant's attorneys in the city of St. Louis with a view of compromising the indebtedness. Mr. Mills, of the firm of Mills & Flitcraft, who represented several creditors including the plaintiff, attended this meeting. At the meeting the condition of the defendant's business was discussed, and a statement was made of its liabilities and assets. At this meeting the defendant offered to pay forty-percent. cash, provided the holders of indebtedness to a certain amount would first sign a compromise agreement

on that basis. The plaintiff was notified of the proposition, whereupon he wrote to R. G. Dunn & Co. the following letter: '

"CHICAGO, May 28, 1890.

"*R. G. Dunn & Co.*, 157 *LaSalle St., Chicago.*

"Your report on claim of A. Siegel Gas-Fixture Company of the twenty-fourth duly received, and will give you a decision in a few days. We shall be *guided largely* by instructions from Archer & Pancoast Manufacturing Company, New York, whose goods we are agents for here, and who have also placed their claim in your hands.                Very respectfully,

"*H. G. Willard & Co.*"

Upon the receipt of this letter R. G. Dunn & Co. wrote to Mills & Flitcraft concerning the proposed settlement as follows:

"Client writes 'Will give you our decision in a few days about the matter of the above claim. Will be *guided* by instructions from Archer–Pancoast Manufacturing Company of New York, whose goods we are agents for here,' " etc.

It will be observed that R. G. Dunn & Co., in communicating the plaintiff's reply to the proposition of settlement, omitted the word "*largely*," which materially changed the purport of the original communication. Mr. Mills showed this letter to Mr. Siegel, the president of the defendant. Soon afterwards Siegel went East, and secured the signatures of all the eastern creditors to the composition agreement, including that of the Archer & Pancoast Manufacturing Company. When this manufacturing company signed the agreement, Mr. Siegel took it for granted that the company also represented the plaintiff, and, upon the strength of this, the defendant notified Mr. Mills that the settlement had been agreed to by the plaintiff. Mills accepted this statement as true, received and receipted for forty per cent. of the claim, and sent the amount to R. G. Dunn & Co. When the latter remitted the amount of

the collection to the plaintiff, the settlement was repudiated as having been made without authority, and the check returned to R. G. Dunn & Co., who in turn mailed it to Mills & Flitcraft. When Mr. Mills received the check, he immediately notified the defendant that his client had refused to approve the settlement and offered to return the money, which was declined. We believe the foregoing to be a fair statement of the evidence bearing on the only issue in the case.

The extent of the agency of an attorney at law has been well defined by several decisions of this court, and the supreme court, and they all declare but one doctrine. A lawyer has the right to receive and receipt for any money due his client, and such acquittance will bind the client to the extent only of the amount received. If a suit is pending, he has full authority to control and manage the case in the court, even to the extent of dismissing it. But he has no power by virtue of his employment merely to compromise a case, or to accept a part of a claim in satisfaction of the whole. Therefore, any act of his beyond his authority, as fixed by law, is *prima facie* without authority. *Walden v. Bolton*, 55 Mo. 410; *Spears v. Ledergeber*, 56 Mo. 465; *Melcher v. Bank*, 85 Mo. 362, 371; *Semple v. Atkinson*, 64 Mo. 504; *Roberts v. Nelson*, 22 Mo. App. 28; *Lewis v. Baker*, 24 Mo. App. 682. Of course a party, who relies upon a compromise made with the attorney of his adversary, may show that express authority existed to make the compromise, or he may show that the principal had so acted that it would be a fraud to allow him to repudiate the act of his attorney. In other words he would be estopped to assert the truth. *Black v. Rogers*, 75 Mo. 441.

Applying the foregoing principles to the evidence, it is difficult to understand how the circuit judge could have acted otherwise than direct a verdict for the plaintiff for the balance of the debt. It is doubtless true that the defendant's president believed that the plaintiff was,

in the sale of the goods, acting only as the hired agent of the Archer & Pancoast Manufacturing Company, and that for this reason it was only necessary to secure the consent of the manufacturing company to the settlement. But he failed to show by any substantial evidence that he was led into this error by anything done or said by the plaintiff. The letter of R. G. Dunn & Co. to Mills & Flitcraft stated that the plaintiff would, in making the settlement, "*be guided* by the instructions of the Archer & Pancoast Manufacturing Company." This letter may have led Mr. Siegel into the error, but it must be borne in mind that the plaintiff made no such declaration. He wrote to R. G. Dunn & Co. that "he would be guided *largely* by the instructions of the manufacturing company."

The fact that Mr. Mills attended the creditors' meeting cannot help out the defendant's case. Its counsel argue that the fact of his attendance at the meeting is some evidence, that he had express authority from the plaintiff to compromise the claim. If there were anything in this argument, it would be exploded by the testimony of Mr. Mills to the effect, that he was not instructed by the plaintiff to go to the meeting, but was invited there by the defendant's attorney. But under any circumstances the idea is too far-fetched and fanciful to be maintained. The meeting was called by the defendant, and the creditors were invited to attend. The object of the meeting was to make a showing of the liabilities and assets of the corporation with the view of a proposition, of settlement to be made by the defendant. That was the sole object of the meeting.

It is insisted further that, at the time the claim was placed in the hands of R. G. Dunn & Co., the assignment had been made, and that a simple authority to collect could not have been within the contemplation of the parties,—that a power beyond that of a mere collection of dividends was necessarily intended. This suggestion is without force. The demand had to be allowed by the

assignee, and the rules of ordinary business would require that it be placed in the hands of some one for the purpose of securing the allowance, and also to see that the assignee was prompt and faithful in the discharge of his duties, and that the defendant had made a full disclosure of all assets.

The manager of R. G. Dunn & Co. testified on cross-examination that he did not remember whether the original instructions to his principal in respect of the collection of the plaintiff's claim were in writing or not. But he testified positively that the instructions, whether in writing or not, did not authorize R. G. Dunn & Co. to compromise the claim. There was no evidence to the contrary. Upon this testimony the defendant's last argument is founded. It is asserted as a proposition of law that, where a contract rests in parol, its interpretation is for the jury, and not the court. Counsel would be right, if we were considering a case where there was any dispute under the evidence as to the terms of such a contract. When the terms of a parol agreement are given, and are unambiguous, its interpretation is as much a question of law for the court as the interpreta- of an unambiguous written instrument. *Norton v. Higbee*, 38 Mo. App. 467.

There are other objections urged against the ruling of the court, but we do not think it necessary to discuss them, as the result would be the same. Judgment affirmed. Judge THOMPSON concurs; Judge ROMBAUER concurs in the result.