Estes v. Hamilton-Brown Shoe Co.

---

HUBERT R. ESTES Respondent, v. HAMILTON-BROWN SHOE COMPANY, Appellant.

St. Louis Court of Appeals, October 24, 1893.

1. **Contracts:** SUFFICIENCY OF THE EVIDENCE. There was evidence that the plaintiff entered the defendant's employment in order to eventually become a salesman, and that, when he did so, the defendant's president stated to him that the defendant paid each of its salesmen as compensation two per cent. of the amount of his sales. Afterwards the plaintiff acted as salesman for the defendant without any express agreement concerning his compensation. *Held,* that this evidence warranted the inference of an agreement to pay him the percentage stated.

2. ———: IRRELEVANCY OF EVIDENCE. But *held*, that statements of the defendant's officers to the plaintiff in regard to the compensation paid to its salesmen, made casually and not in reference to his own future employment, were not relevant.

3. Oral Contracts: LAW AND FACT. If the terms of an oral contract are ambiguous, the meaning or intention of the parties is a question of fact for the jury.

4. Account Stated: STATUTE OF LIMITATIONS. When a running account is balanced and adjusted by one of the parties thereto with the assent of the other, it becomes an account stated and its items become subject to the statute of limitations. This is true, though the result or balance is not paid but is transferred to a succeeding account; but the balance is in such case treated as an item of a new running account.

4. Running Account: CHANGE OF ITS CHARACTER. A running account is the result of a mutual agreement, express or implied. Either party to it may accordingly stop the running of the account by communicating to the other party his intention or determination to do so.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED.

*Silas B. Jones*, for appellant.

(1) Where it is expressly agreed or impliedly understood between the parties to an account, while it is accruing, that the account is to be kept open and continued as one and the same continuous transaction and course of dealing, the account is considered as one continuous account and one demand. *Ring v. Jamison*, 2 Mo. App. 584 (589); *Ring v. Jamison*, 66 Mo. 424 (428); *Boylan v. St. Bt. Victory*, 40 Mo. 244; *Harrison v. Hall*, 8 Mo. App. 167; *Loeffel v. Hoss*, 11 Mo. App. 133; *Roeder v. Studt*, 12 Mo. App. 566; *Thompson v. Brown*, 50 Mo. App. 314 (320). On the other hand, unless the parties do expressly or impliedly agree that their dealings shall constitute one continuous and

unbroken transaction and course of dealing, their dealings do not constitute an open and running account between them.    (2) Since the existence of a running account depends upon the continuing mutual assent of the parties thereto, it may be terminated on any day by either of the parties thereto plainly refusing to so deal with the other party any longer.    *Gunn v. Gunn*, 74 Ga. 555, (569); 2 Wood on Limitations, [2 Ed.] p. 715.    (3) The theory upon which the statute is based, which exempts mutual accounts from the statute of limitations, is that the parties thereto permit them to run with a view of their ultimate adjustment as a whole.    *Green v. Disbrow*, 79 N. Y. 1 (9); 2 Wood on Limitations, pp. 715, 716 and notes.    (4) An account may become stated against a party by his tacit admission.    An express admission of the correctness of an account is not essential to its becoming stated; nor is it necessary to the stating of an account that there be any formal meeting or computation between the parties thereto.    *Powell v. Railroad*, 65 Mo. 658; *Brown v. Kimmel*, 67 Mo. 430; *McCormack v. Sawyer*, 104 Mo. 36; *Kent v. Highleyman*, 17 Mo. App. 9; *Mulford v. Caesar*, 2 Mo. Legal News, 512.    (5) It is not essential to the stating of an account that the balance found be paid; but the balance may be carried forward, and this does not render the account open and running from the beginning.    *Union Bank v. Knapp*, 3 Pick. 96; Angell on Limitations [6 Ed.], sec. 151.

*Collins & Jamison*, for respondent.

(1) Where services are rendered under an agreement which does not fix any certain time for payment, nor when the services shall end, the contract of employment will be treated as continuous, and the statute of limitations will not begin to run until the

services are ended. The right of action at the close of the service is an entire right, and applies to the entire service, and the employee is entitled to claim for the whole amount of all unpaid wages for all the services rendered under the agreement; it is not the subject of account. *Carter v. Carter*, 36 Mich 207; *Taggart v. Tevanny*, 27 N. E. Rep. (Ind.) 511; *Story v. Story*, 27 N. E. Rep. 573; *Litter v. Smiley*, 9 Ind. 116. It is a well-established principle of law in this state that in the case of a running account the statute of limitations does not begin to run until the date of the last item in such account. Revised Statutes of 1889, sec. 6778; *Ring v. Jamison*, 2 Mo. App. 584; 66 Mo. 428; *Murphy v. People's Railway Co.*, 15 Mo. App. 595; *Phinney v. Brant*, 19 Mo. 42 and 49; *Penn v. Watson*, 20 Mo. 13; *Boylan v. St. Bt. Victory*, 40 Mo. 251. To constitute an "account stated" two things are necessary: First, that there be a mutual examination of the claims of each other by the parties; and, second, that there be a mutual agreement between them as to the correctness of the account, and of the allowance and disallowance of the respective claims, and of the balance; and this is struck upon final adjustment of the whole account on both sides. The minds of the parties must meet upon the allowance of each item or claim allowed, and upon the disallowance of each claim or item rejected; they must mutually concur upon the final adjustment, and nothing short of this will fix and adjust their respective demands as an "account stated." *Lockwood v. Thorne*, 18 N. Y. 288; *Bussey v. Gant*, 10 Humphrey (Tenn.), 238; *Railway Co. v. Kimmel*, 58 Mo. 83; *Edwards v. Hoeffinghof*, 38 Fed. Rep. 635, 645. Balancing an account of a person's own books does not constitute an "account stated," where there is no evidence that

it was done with the consent of the other party. *Nostrand v. Dittmis* 28 N. E. Rep. 27; *Railway Co. v. Kimmel,* 58 Mo. 83.

BIGGS, J.—The plaintiff recovered a judgment against the defendant for $1,067.37. It is urged by the defendant on this appeal that the proof failed to establish the plaintiff's alleged cause of action. We will dispose of this question first.

It is averred in the petition that on the first day of January, 1886, the defendant employed the plaintiff as a traveling salesman; that it was then agreed that the plaintiff should receive as compensation for his services two per cent. on all goods sold by him; that the plaintiff continued to sell goods for the defendant until April 1, 1892; that the commissions on the goods sold by him during that time amounted to $18,240; that during the time the defendant paid to him on account of his commissions various sums of money amounting in the aggregate to $17,080, and that there remained due to him $1,160, for which judgment was asked.

The matter in controversy is the plaintiff's salary for the year 1886. It is conceded that after the first year the plaintiff was to receive two per cent. on all sales, and that he was credited accordingly on the defendant's books. There is no dispute concerning the amounts paid to the plaintiff during any of the years. At the close of the year 1886 the defendant credited the plaintiff on its books with $1,800 as salary for that year, and the account was balanced and closed by carrying the balance into the account for 1887.

The officers of the defendant, with whom the contract of employment was made, testified that the employment of the plaintiff as a traveling salesman was an experiment, and that it was expressly agreed

that for the first year he was to receive what they deemed his services to be reasonably worth; that at the end of the year they concluded that $1,800 was a fair and just compensation; that this amount, with the plaintiff's knowledge and without objection by him at the time, was passed to his credit on the defendant's books, the account closed, and the balance transferred to the books of 1887.

On the other hand, the plaintiff's testimony was to the effect that in the year 1882 he applied to the president of the defendant company for employment as a traveling salesman; that, having had no experience in the boot and shoe business, it was agreed that he should go to work in the store for the purpose of learning the business, and that, as soon as he had acquired the requisite knowledge, he was to be sent upon the road. The plaintiff also testified that with this understanding he accepted a position in the house and continued there until January, 1886, except for about a month in the fall of 1885, when he was requested to take the place of one of the defendant's traveling salesmen. Concerning the wages he was to receive he testified that, at the time he first made the application for employment, the president of the defendant informed him that the house paid all of the salesmen two per cent. on the amount of their sales; that, afterwards, during his employment in the house, he often heard the president and other officers of the defendant say the same; but he would not say that, at the time he was actually or definitely employed to travel for the defendant, there was anything said about his compensation.

Under the plaintiff's own testimony, the defendant at no time expressly agreed to pay to him a definite compensation for the year 1886; but the statement made to him in 1882 by the president of the defendant that the latter paid all of its traveling men two per

cent. on sales, and the repetition of the same statement by the officers of the defendant at the time the plaintiff was requested to go temporarily on the road furnished substantial evidence, from which the jury was authorized to infer a promise in 1882 to pay plaintiff that amount whenever he fitted himself for the position. Therefore, if at the time the plaintiff was actually employed to travel for the house, nothing to the contrary was said, and the plaintiff in good faith relied on these statements as a continuing promise, the defendant would be estopped from denying that it had so agreed.

There was evidence tending to prove that during the year 1886 the plaintiff sold goods to the amount of $143,912.59, for which, under the contract as claimed by him, he ought to have received credit for $2,878.25, whereas the defendant allowed him only $1,800.00. This being the only matter in dispute, the defendant interposed the statute of limitations. It is insisted by the plaintiff that the account is a mutual and running account, and that in this way the contested item is withdrawn from the operation of the statute. On the other hand it is contended that in December, 1886, the account for that year was "stated," which rendered the account for that year a stated account. It is further insisted that, even though the plaintiff did not consent or agree to the account as adjusted, the defendant by its unequivocal act in balancing and closing it, which was communicated to the plaintiff at the time, clearly indicated an intention to close the business for that year and to cut it loose so to speak from the business of the succeeding year, thereby breaking the continuity of the account.

On this branch of the case the court at the instance of the plaintiff instructed the jury as follows:

"No. 4. And the court instructs the jury that, if they believe from the evidence in this cause that the plaintiff was in the employ of the defendant as traveling salesman from the first day of January, 1886, to the first day of April, 1892, and that the defendant kept an account with said plaintiff during said time, and that the balance due said plaintiff from said defendant was at the end of each year carried forward to the succeeding year, then the jury are instructed that such an account and dealings between the parties to this suit constituted a running account, and the statute of limitations does not begin to run until the date of the last item properly embraced in said account."

This instruction virtually cut up by the roots, or rather ignored, the real defense attempted to be made on this branch of the case. That the plaintiff sold goods for the defendant from January 1, 1886, to April 1, 1892, and that this account at the end of each year was balanced and the balance carried forward on the defendant's books, was in no way disputed. The defendant's own books, which were read in evidence, showed this. But the defendant's evidence, as we have shown, tended to prove that in the latter part of December, 1886, the plaintiff's account, with his knowledge and assent, was balanced and adjusted, the account thereby becoming "stated." *Powell v. Railroad*, 65 Mo. 658; *Brown v. Kimmel*, 67 Mo. 430; *McCormack v. Sawyer*, 104 Mo. 36; *Kent v. Highleyman*, 17 Mo. App. 9. If a running account is at any time "stated," it is no longer a running account, and all of its items at the date of the adjustment become subject to the operation of the limitation statute (*Gunn v. Gunn*, 74 Ga. 555; *Schall v. Eisner*, 58 Ga. 190; *Harrison v. Hall*, 8 Mo. App. 170); and it would make no difference that the amount found to be due on such accounting was

not paid, but was transferred to the account of the suc-
ceeding year. Such balance would be treated as an
item in a new account. *Bank v. Knapp*, 3 ·Pick. 96;
Angell on Limitations [6 Ed.] sec. 151; *Inhabitants, etc.,
v. Bridgman*, 118 Mass. 486. Therefore under the evi-
dence the instruction was incomplete. The only
question is whether the defendant's instructions, which
presented the theory of a ";stated" account, supplied
the omission. If the instruction had inferentially pre-
sented that view of the evidence, or if the jury had
been expressly referred to the defendant's instructions
on the subject, the defect would have been cured. As
it did neither, the instruction as given was incomplete
and calculated to mislead and confuse the jury.

There is another phase of the defendant's evidence,
which was entirely ignored by this instruction. A
running account is the result of a mutual agreement
either expressed or implied. *Gunn v. Gunn*, 74 Ga.
555. It necessarily and logically follows from this
premise that, if such a course of dealing has been
adopted, either party may change the character of the
account by communicating to the other party his inten-
tion or determination to do so. Therefore, even though
the evidence failed to show an account "stated," the
entering of the item of salary at the end of the year
1886, and the balancing of the account, furnished evi-
dence from which the jury might have inferred an
intention on the part of the defendant to separate or
cut loose the transactions of that year from those of
the succeeding year for the purpose of changing the
character of the account.

In opposition, the theory is advanced for the first
time in this court, that the plaintiff's claim for wages
is not the subject of account for the reason that no time
was fixed for payment, nor was it agreed when the ser-
vices should end, and that for these reasons the employ-

ment must be treated as continuous, and that the statute of limitations would not begin to run until the services were ended. The evidence cannot be made to harmonize with such a theory. The principle, as stated, is to be found in the books, but to make it of any value here, it must have appeared that the plaintiff was not entitled to any compensation until the service was terminated. All of the evidence negatives any such idea. Besides, the plaintiff tried the case upon an entirely different theory.

At the instance of the plaintiff the court also gave the following instruction, of which the defendant complains:

"The court instructs the jury that, if they believe from the evidence in this cause that, at the time *or at various times prior* to the time of the employment of plaintiff by the defendant as traveling salesman, the president of the defendant, in conversation with the plaintiff, stated to the plaintiff that the defendant paid to all its traveling salesmen their necessary traveling expenses and two per cent. commissions on all goods sold by said traveling salesmen, and that said plaintiff, relying upon said statements of the defendant's president, and believing the same to be true, and that said plaintiff, without other agreement with defendant, went to work for the defendant as traveling salesman, then the court instructs the jury that said facts *constituted a contract* between said parties, that the defendant would pay said plaintiff his necessary expenses as traveling salesman while in the employ of the defendant, and two per cent. commissions on all goods sold by the plaintiff for and on account of the defendant."

It was competent for the plaintiff to show what was said to him by the president of the defendant at the time of the employment, or what had been previously said to him *in view* of his future employment.

But it was not competent to show what the president or any other officer of the defendant company may have said in a casual conversation concerning the wages paid to traveling salesmen. To make such prior con-. versations evidence of the terms of the plaintiff's employment, the conversations must have been had *in connection with or in reference to his future employment.*

The instruction is also wrong in that it told the jury that, if they found that the plaintiff's version of the contract was true, it *constituted* a contract to pay to plaintiff two per cent. commissions on all sales made by him. The rule in reference to the construction of verbal contracts as adopted by this court *(Norton v. Highbee,* 38 Mo. App. 467; *Willard v. Siegel Co.,* 47 Mo. App. 1) is thus stated in *Festerman v. Parker,* 10 Ired. Law, 476. "If verbal, and the parties dispute about the terms of the agreement, it involves a question of fact, as to the terms, to be decided by the jury; but if there is no dispute as to the terms, and *they* be precise and explicit, it is for the court to declare their effect." In other words, if the terms of an oral contract are ambiguous, the meaning or intention of the parties is a question of fact for the jury. According to the plaintiff's testimony as to what was said by the officers of the defendant, no definite promise was made to pay to plaintiff a stipulated compensation. It only furnished evidence from which the jury might infer such a promise.

There are other objections and questions presented in the briefs, which we do not deem it necessary to discuss. We think that the case in other respects was properly tried. For the errors pointed out, the judgment will be reversed and the cause remanded. All the judges concur.